ARTHUR *v.* GORDON· *et al.*

(*Circuit Court, E. D. Tennessee.* February 2, 1889.)

CONTRACTS—REQUISITES—AGREEMENT.
　　Defendant wrote plaintiff: "When you can give $1,000 for my interest, send your deed and money," to which he replied: "I am not willing to give more than $750;" but six days later his agent wrote to defendant: "I am directed to accept your offer," to which defendant replied: "I have turned my business [over] to W., and he will trade with you, and then send me deed. * * * Upon presentation of deed from him, will sign and send back." *Held,* that there was no contract.

In Equity.
Bill for specific performance by A. A. Arthur against William F. Gordon and Hugh and C. B. White.
*Andrews & Thornburgh,* for complainant.
*Washburn & Templeton,* for defendants.

KEY, J. The bill in this case is filed for a specific performance of an alleged contract for the sale and conveyance of certain lands situated in the vicinity of Cumberland Gap. The negotiations in regard to the matter were carried on by correspondence through the mails. C. H. Rogers appears to have initiated the correspondence by a letter dated January

18, 1887, which is not copied into the record, to which Gordon replies, February 1, 1887: "Will say you can have the lands referred to for fifteen hundred dollars, provided you want it right off, as I do not propose to give any option on the property." Rogers was the agent of complainant. March 3 or 17, 1887, complainant writes defendant Gordon: "We consider this [land] worth $600 in cash, and if you are agreeable to sell out to us at that figure, we will remit amount with quitclaim deed for your signature. Please reply at once; for if you will not accept this offer, we may apply for partition sale in the usual way." Complainant already had purchased some undivided interests in the lands. To this proposition Gordon replied, March 23, 1887: "Yours of 17th inst. received, containing bid of $600 for my entire interest in the Ky. & Tenn. lands, which I am very sorry to say I cannot accept. * * * When you can give $1,000 for my interest, send your deed and money." June 22, 1887, complainant says: "Referring to your correspondence, I now beg to inform you that the acreage of your tract of land in Poor valley is considerably less than you thought it, and I am not willing to give any more than $750 for your interest in that and your interest in the mountain lands of Kentucky. If you are willing to accept this sum, advise me immediately, and the deeds will be sent for your signature." To this proposition it does not appear that Gordon ever made any response. June 28, 1887, Seymour, as agent of complainant, wrote to Gordon: "I am directed by Mr. Arthur to accept your offer." That is, the offer of March 23, 1887. To which Gordon replied, July 5, 1887: "I have turned my business [over] to Mr. Hugh White and he will trade with you, and then send me deed in accordance with the laws of those states, quitclaim deed, * * * upon presentation of deed from him, will sign and and send back through Citizens' Bank, Nevada, Mo." July 21, 1887, Gordon and wife conveyed the lands to C. B. White.

The first question to be determined is, was there a contract between complainant and Gordon for the purchase and sale of the lands? Did their minds ever meet upon any one of the propositions which passed from one to the other? It is insisted for complainant that there was an agreement of the parties upon the offer made by defendant Gordon, March 23, 1887, to sell for $1,000; that this proposition was accepted by Seymour's letter of June 28, 1887, and acknowledged by Gordon's reply of July 5th following. Let us see how this is. Gordon said: "When you can give $1,000 for my interest, send your deed and money." Arthur had offered $600, and said he would remit amount with quitclaim deed for Gordon's signature. Gordon was requested to reply at once. Arthur says as to Gordon's offer to sell for $1,000: "I am not willing to give more than $750. If you are willing to accept this sum, advise me." Here was a clear, definite, and explicit refusal to accept Gordon's proposition. It is as if Arthur had said: "I decline to give you a thousand dollars, but will give you $750. Will you accept this sum?" This brought the $1,000 proposition to an end, and in its stead came a proposition from Arthur to give $750 which was never accepted. The alleged acceptance of the $1,000 offer by Seymour amounted to

nothing, for there was nothing upon which it could fasten itself. The offer had been declined by Seymour's principal, and another substituted by him for it. But it is insisted that Gordon's note of July 5th in reply to Seymour's letter should be construed into an acceptance of Seymour's offer. A reasonable regard to the manifest meaning of the terms of this note does not sustain this position. "I have turned the business [over] to Mr. White, and he will trade with you. * * * Upon presentation of a deed from him, I will sign and send it back." As to turning the business over to White, he spoke of what had taken place before Seymour wrote. The fair interpretation of the language is that Gordon declined to take any step in the matter, because he had placed the business in White's hands. "White will trade with you,—that is, White will sell to you,—and when he does, and presents me the deed, I will sign it and send it back." No doubt Gordon believed that White would sell to Arthur, but certainly there was no contract, order, or direction that he should do so. The following decisions control this case:

"The rules of law which govern this case are well settled. As no contract is complete without the mutual assent of the parties, an offer to sell imposes no obligation until it is accepted according to its terms. So long as the offer has been neither accepted nor rejected, the negotiation remains open and imposes no obligation upon either party. The one may decline to accept, or the other may withdraw his offer; and either rejection or withdrawal leaves the matter as if no offer had ever been made. A proposal to accept, or an acceptance upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it or assents to the modification suggested. The other party, having once rejected the offer, cannot afterwards revive it by tendering an acceptance of it." *Railway Co.* v. *Rolling-Mill Co.*, 119 U. S. 151, 7 Sup. Ct. Rep. 168.

"A proposal to accept, or acceptance upon terms varying from those offered, is a rejection of the offer." *Bank* v. *Hall*, 101 U. S. 50.

It appears that in the case under consideration there has been no meeting together of the minds of the parties so as to make a contract mutually binding upon each in regard to the sale and purchase of the lands in controversy, and, as a consequence, complainant is not entitled to the relief he seeks. His bill will therefore be dismissed, with costs, and it is ordered accordingly.