[No. 14383.   Department Two. — September 30, 1891.]

J.  P  MEUX, APPELLANT, *v.* S. L. HOGUE, RE-
SPONDENT.

VENDOR AND PURCHASER — CONTRACT OF SALE — SUBSCRIPTION BY PUR-
CHASER — AGENCY — SALE SUBJECT TO APPROVAL OF VENDOR — RATIFI-
CATION. — Although it is not necessary for the vendor of real property to
subscribe the agreement for its sale, in order to make the agreement
binding upon the purchaser, yet where the agreement is made through
agents acting under verbal authority, "subject to the approval of the
owner," it is necessary that the vendor should know its contents and
approve and ratify it before it can become binding upon either party.

ID. — MISINFORMATION OF VENDOR BY AGENT — INSUFFICIENT RATIFICATION.
— Where the agents of an owner of real property, acting under verbal
authority, entered into a written agreement of sale of the property with
an intending purchaser, "subject to the approval of the owner," but the
owner of the property neither saw the written agreement nor learned its
terms, except from a letter of the agents, which stated that the property
was sold for a price and upon payments which materially differed from
those named in the written agreement of purchase, a letter from the
owner confirming the sale as reported to him, and his execution and
tendering of a deed to the purchaser, expressing the consideration re-
ported, does not constitute an approval and ratification of the sale upon
the terms stated in the agreement of purchase.

ID. — CONTRACTS — COMPLETION — MISUNDERSTANDING AS TO TERMS — UN-
CERTAINTY. — In order to constitute a valid contract, the minds of the
contracting parties must meet and agree to the same thing.   Where there
is a misunderstanding as to the terms of the contract, neither party is
liable either in law or equity. .  Where a contract is a unit, and left uncer-
tain in one particular, the whole will be regarded as only inchoate, because
the parties have not been *ad idem*, and therefore neither is bound.

ID. — PROPOSAL — ACCEPTANCE — REJECTION OF OFFER. — A proposal to
accept or an acceptance upon terms varying from those offered is a
rejection of the offer.

APPEAL from a judgment of the Superior Court of
Fresno County.

The facts are stated in the opinion.

*Meux & Edwards*, and *Thompson & King*, for Appellant.

A note or memorandum of the agreement is all that is
necessary to be signed, and that only by the party sought
to be charged.   It was unnecessary, therefore, that it
should have been signed by the plaintiff or his agent.
(*Vassault* v. *Edwards*, 43 Cal. 459; *Rutenberg* v. *Main*, 47
Cal. 213; Pomeroy on Specific Performance, sec. 75;

*Scott* v. *Glenn*, 87 Cal. 221.)   It is evident from the admissions of the defendant himself that this was a speculation upon which he failed to realize according to his expectations, and which he now seeks to get out of.   His subsequent actions constituted a waiver of all objections which might have been previously urged.   It would be a fraud upon the vendor were it otherwise.   (Pomeroy on Specific Performance, secs. 377, 381, 407, 418, 419; *Scott* v. *Glenn*, 87 Cal. 221; *Rutenberg* v. *Main*, 47 Cal. 213.)   The execution and delivery of the deed to the agents to be delivered to the defendant before payment of the money agreed to be paid completed the sale on the plaintiff's part, and left nothing further for him to do.   A verbal contract for the sale of land, under these circumstances, is enforceable.   (*Cannon* v. *Handley*, 72 Cal. 133.   See also *Rutenberg* v. *Main*, 47 Cal. 213.)   The deed was a note or memorandum in writing of the contract, and was sufficient evidence to take the case out of the statute of frauds.   (*Cagger* v. *Lansing*, 47 Barb. 421; *Worrall* v. *Munn*, 5 N. Y. 229; 55 Am. Dec. 330.)   The purchaser having been familiar with the whole transaction, and having subsequently received a deed with the consideration stated, to which no objection was made, but only returned it with a request that it be made to another party, the maxim, *Ut res magis valeat quam pereat*, applies.   (See Civ. Code, secs. 3399–3402, 3533.)   The defendant waived any objection which might have been urged against the memorandum of the contract, and is estopped by his own conduct from setting up any irregularity which might have existed.   (Civ. Code, secs. 3513–3516; Code Civ. Proc., sec. 1962, subd. 3, and notes; *Scott* v. *Glenn*, 87 Cal. 221.)   The law does not require the tender of a deed where the vendee refuses to perform on his part before suit.   (Pomeroy on Specific Performance, secs. 360, 361; *Gray* v. *Dougherty*, 25 Cal. 266–280.)

*Edward Lynch*, for Respondent.

The contract was not established as alleged in the complaint.   (*Magee* v. *McManus*, 70 Cal. 556; *Burnett* v.

*Kullak,* 76 Cal. 535; *Breckinridge* v. *Crocker,* 78 Cal. 535.)
There was no agreement in writing to buy or sell, as no
one is named in the alleged agreement as the owner of
the land to be sold. (Civ. Code, sec. 1558; *Grafton* v.
*Cummings,* 99 U. S. 106; *Breckinridge* v. *Crocker,* 78 Cal.
534–538.)   A ratification can be made only in the man-
ner that would have been necessary to confer an original
authority for the act ratified, which would be, in this case,
by a declaration in writing which would, in substance,
recite the contract entered into and the approval thereof,
signed by Meux; but as no such thing was done, there
was no ratification of the agency or contract. (Civ.
Code, sec. 2310.)            /

BELCHER, C. — The plaintiff brought this action to
enforce the specific performance of a contract to pur-
chase from him certain lots of land in the city of Fresno.

The court below gave judgment for the defendant,
from which the plaintiff has appealed, and has brought
the case here on a bill of exceptions.

The principal question in the case is, whether an en-
forceable contract was made between the parties for the
sale and purchase of the lots.

The material facts of the case, as shown by the record,
are as follows: The plaintiff was residing in San Fran-
cisco, and was the owner of the lots; and prior to April
10, 1888, he had verbally authorized Rader & Bear, who
were real estate agents at Fresno, to sell them. .

On the day of its date, the defendant executed and de-
livered to Rader & Bear a paper reading as follows: —

"FRESNO, CAL., April 10, 1888.

"Received from S. L. Hogue and J. D. Power the sum
of $100, in gold coin, being a deposit and part payment
on account of bargain and sale made to them this day
of a certain lot, tract, or parcel of land lying and being
situate in the city of Fresno, county of Fresno, state of
California, and bounded and described as follows, namely,
lots 13, 14, 15, and 16, in block 77, said lots having been
sold to them this day for the sum of $8,925, in gold coin,

subject to the approval of the owner, the balance to be paid, $1,425 on delivery of deed and abstract, $1,000 six months, and $1,600 on one year from February 1, 1888, at ten per cent interest from date, or this deposit to be forfeited without recourse, title to prove good or no sale, and this deposit to be returned subject to approval of owner.

"We hereby agree to buy the property above described, upon the terms and conditions hereinbefore expressed.

"S. L. HOGUE.

"J. D. POWER,

"By S. L. H.

"RADER & BEAR, Agents."

On the same day, the agents wrote to plaintiff, but did not send him a copy of the contract, nor does it appear that he ever saw the contract or a copy of it. The letter is as follows:—

"FRESNO, CAL., April 10, 1888.

"J. P. MEUX, Esq., 240 Montgomery Street, San Francisco, Cal.

"*Dear Sir,*—We have sold lots 13 to 16, inclusive, in block 77 of Parkhurst's addition, for four thousand dollars. Terms: Sixteen hundred dollars cash, one thousand dollars in six months, and sixteen hundred dollars in one year; interest ten per cent. This sale is made upon the terms left us by your brother, Dr. Meux. He preferred sixteen hundred dollars cash. Please send deed and abstract at once, as the purchaser is ready to take up the deed at once. Yours truly,

"RADER & BEAR."

To this letter plaintiff replied, but the reply was not produced and put in evidence. Rader could only testify, as to its contents, that it "amounted to just a confirmation of the sale as it was made, on the terms," etc. And the plaintiff only said: "I wrote to Mr. Rader that I confirmed the sale that had been made; that I was satisfied with the sale of the property, and would give a deed to the parties."

Several other letters in reference to the matter subse-

quently passed between the plaintiff and his agents, but none of them were produced, nor were their contents shown.

Shortly after the receipt of the letter above set out, plaintiff sent to the agents a deed of the property. When this deed was shown to Hogue, he requested that it be sent back to plaintiff, and that he should make another deed to one Murray. The deed was sent back, and plaintiff made and forwarded another deed, in which Murray was named as ˮgrantee. This second deed, Rader testified, was tendered to Mr. Hogue; and he also said, " I don't know what has become of that deed; I don't think Mr. Hogue ever took the deed up. I suppose it afterwards fell back into the hands of Mr. Meux." Neither of the deeds above mentioned was produced or offered in evidence. Subsequently, a third deed was made, and of this the plaintiff testified: "I executed another deed, and. again tendered him (Hogue) a deed. That was on the 9th of February, 1889. He declined to receive it, and he said that he would not take the property, and I waited some little while and filed this complaint against him." The deed was produced, and in it S. L. Hogue and J. D. Power were named as grantees, and the consideration expressed was four thousand dollars.

When the first deed was offered to Hogue, the agents stated that they would deliver it upon the payment of a certain amount of money, and the execution of notes and a mortgage for the balance.

The action was commenced against Hogue and Power; but upon Hogue's statements that he signed Power's name to the contract without any authority, the action was dismissed as to the latter.

Section 1741 of the Civil Code provides: "No agreement for the sale of real property, or of an interest therein, is valid, unless the same, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged, or his agent thereunto authorized in writing."

The agreement produced here was not subscribed by

the seller, or by any agent authorized, in writing, to sub-
scribe it, nor can it be ascertained therefrom who the
seller was.    It was probably not necessary that the seller
sign the paper (*Vassault* v. *Edwards*, 43 Cal. 459; Pome-
roy on Specific Performance, sec. 75); but it was made
"subject to the approval of the owner," and it was neces-
sary that he should know its contents and approve and
ratify it before it could become binding upon either
party.

It is claimed for appellant that he fully approved and
ratified the sale, upon the terms named in the paper, by
his letters to his agents and by the deeds which he exe-
cuted and offered to the purchaser.    But, as before stated,
it is not shown by the record that he ever saw the writ-
ten agreement or ever learned its terms, except from the
letter above quoted.

Now, what were the terms of sale which the appellant
approved and ratified?    The agreement states that the
property was sold for $3,925, and that the balance to be
paid was $1,425 on delivery of deed, $1,000 in six months,
and $1,600 on February 1, 1889, thus making the deferred
payments aggregate $4,025.    The letter states that the
property was sold for four thousand dollars, to be paid
as follows: Sixteen hundred dollars cash, one thousand
dollars in six months, and sixteen hundred dollars in
one year, thus making the payments aggregate four
thousand two hundred dollars.    And the complaint
states that the property was sold for four thousand
dollars, payable sixteen hundred dollars cash, one thou-
sand dollars in six months, and fourteen hundred dollars
on the first day of February, 1889.    (At the conclusion
of the trial, by consent of counsel and by leave of the
court, the complaint was "considered amended on its
face so as to conform to the contract of purchase and
to the evidence.")

These terms are not the same, but materially differ-
ent, and the ratification, if any, must have been of the
terms stated in the letter, and not of those stated in the
contract.

But in order to constitute a valid contract, the minds of the contracting parties must meet and agree to the same thing.

"A court of equity will not specifically enforce any contract, unless it be complete and certain. This rule applies as well to parties as to price, subject-matter, etc. . . . . It is essential to the validity of a contract that the parties should have consented to the same subject-matter in the same sense. They must have contracted *ad idem.* . . . . Where there is a misunderstanding as to the terms of a contract, neither party is liable in law or equity. Where a contract is a unit, and left uncertain in one particular, the whole will be regarded as only inchoate, because the parties have not been *ad idem,* and therefore neither is bound. A proposal to accept or acceptance upon terms varying from those offered is a rejection of the offer." (See *Breckinridge* v. *Crocker,* 78 Cal. 529, and cases cited.)

We see nothing in the evidence to take the case out of the rule above stated, and we conclude, therefore, that the court below properly found that the plaintiff never authorized or ratified the contract of sale on which he relies.

We advise that the judgment be affirmed.

VANCLIEF, C., and FITZGERALD, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment is affirmed.