Shaw, J., Angellotti, J., Van Dyke, J.

---

[L. A. No. 1172.   Department One.—September 8, 1903.]

## WILLIAM NILES, Appellant, v. SAMUEL R. HANCOCK, Respondent.

VENDOR AND PURCHASER—CONTRACT OF SALE—OFFER—INSUFFICIENT CONSENT—BURDEN OF PROOF—EXCLUSION OF EVIDENCE.—In an action by an alleged purchaser of land to enforce a contract of sale, the burden of proof is upon the plaintiff to show a written contract between the parties. When the proof offered merely showed a written offer by the proposed vendor, which the proposed purchaser in effect rejected by a less offer, and a subsequent acceptance of the original offer, to which no consent was communicated by the proposed vendor to the purchaser, no written contract appears; and letters and telegrams showing counter proposals, but no meeting of minds in any written contract, were properly excluded from evidence; and judgment was properly rendered for the defendant for want of proof to support the action.

ID.—REFERENCE TO AGENT—PAROL NEGOTIATIONS.—Where the correspondence offered shows that the defendant insisted throughout that final negotiations should be made with defendant's agent; and

nothing appears to show that the terms of credit or of interest on deferred payments were settled in any writing, the agreement could not be considered finally settled. Evidence of parol negotiations with the agent was inadmissible.

ID.—PART PERFORMANCE—LAND IN POSSESSION OF TENANT—SURVEY.— Where the land was in possession of a tenant of the defendant, and was to remain in his possession until the expiration of the lease, the mere permission by the tenant to plaintiff to enter and make a survey was not such a taking of possession of the land as would show part performance of a verbal contract.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

H. A. Barclay, and Gilbert D. Munson, for Appellant.

Stephens & Stephens, and McNutt & Hannon, for Respondent.

ANGELLOTTI, J.—This action was brought to specifically enforce an alleged agreement for the sale by defendant to plaintiff of a tract of land in Los Angeles County. Defendant had judgment, and plaintiff appeals from the judgment and an order denying his motion for a new trial.

The questions involved in this appeal arise upon the rulings of the trial court sustaining objections to the evidence offered by plaintiff.

Practically all of the evidence offered was excluded by such rulings. As there was no evidence actually introduced tending to sustain any of the material allegations of the complaint, and as the burden of proof was on the plaintiff, there is of course nothing in the contention of plaintiff that the evidence was insufficient to sustain the findings, and the twenty specifications of such alleged insufficiency need not be considered.

The theory upon which the trial court sustained objections to practically all the evidence offered by plaintiff was, that the same did not prove a contract in writing between the parties for the sale of the land involved. The specifications of alleged errors of law are entirely sufficient to enable the court to review the material rulings of the court. It was incumbent

on the plaintiff, under the provisions of section 1741 of the
Civil Code and section 1973 of the Code of Civil Procedure,
in order to maintain his action, to show a contract in writing
for the sale of this land.   Certain letters and a telegram were
relied upon as constituting such a contract, and these were
offered in evidence as an entirety, and the first specification
clearly assigns the ruling of the court thereon as error.   From
these letters and the telegram the following facts appear:
Plaintiff resided in Los Angeles County, California.   De-
fendant resided in New Hampshire.   On March 27, 1900,
plaintiff wrote to defendant, asking him if he would sell to
him one hundred to one hundred and fifty acres off the west-
erly side of lot 3 of La Brea Rancho, which lot, the letter
stated, contained two hundred and ninety-two and fifty-four-
hundredths acres, upon about the same terms as he sold lot 2
to A. M. Stephens.   On April 21, 1900, he again wrote, stat-
ing that he had theretofore written to him and had not heard
from him.   On April 30, 1900, defendant wrote to plaintiff,
stating that Mrs. Ida Hancock had a power of attorney to act
for him, to lease or sell land; that he did not know when the
lease on No. 3 expired; that if he should conclude to sell, he
would want to sell the whole lot; and that if plaintiff wished
to buy, he would make a price and let Mrs. Hancock know,
and plaintiff could do the business with her.   On May 5, 1900,
plaintiff wrote defendant, saying he would be pleased to buy
the whole lot, asking him to make the best price he could af-
ford to, and he would finish the business with Mrs. Hancock.
On May 14, 1900, defendant replied, saying: "My price is
$100 per acre.   I may conclude to take less later.   But that
is the way I feel now.   Please inform me soon if you want it
at that price."   Replying May 22, 1900, plaintiff offered sixty-
five dollars per acre, two thousand dollars cash within ninety
days, balance same time, terms, and conditions as sale of lots
Nos. 1 and 2, stating that this was a fair offer, and expressing
the hope that defendant would accept the offer.   On June 1,
1900, defendant replied, saying that he thought his price was
low, that he should want one fifth down, and that if plaintiff
should buy he wished him to ask Mrs. Hancock about the leases
given, so that everything would be satisfactory.   On June 9th
plaintiff again wrote, saying in effect that the price was too

high, and that he did not see how he could pay that price when other land was selling for so much less, but that he would make *one more offer*. He then offered $23,500, which was a fraction over eighty dollars per acre, one fifth cash within four months, and mortgage for balance, same time, terms, and conditions as sale of lots Nos. 1 and 2, stating that in making the offer he had strained a point and made a special effort so that they might agree, and asked defendant to telegraph him at once if he accepted his offer. This letter was received by defendant on June 15, 1900. Defendant made no reply, and on June 18th plaintiff telegraphed him: "Accept your offer to buy lot 3 at one hundred dollars per acre according to your letters May 14th and June 1st." On June 19, 1900, plaintiff wrote to defendant, stating that he had telegraphed his acceptance·and had had a deed prepared which he wished him to acknowledge before a notary public. He also asked him to sign his instructions to the abstract company and return all the papers to them. He also asked for four months within which to make the first payment. On June 26, 1900, defendant wrote to plaintiff, acknowledging receipt of the letter and papers, returning the deed unexecuted, and saying: "I return the papers as you sent them. You know the understanding was that Mrs. Hancock was to do the business with you after you got my prices; now you please pardon me for requiring you to do so." On June 28, 1900, Mrs. Hancock wrote to plaintiff, saying that she had a power of attorney from defendant, under which she had the power to sell his property; that she had a communication from him in regard to negotiations between plaintiff and defendant for the purchase of his property in La Brea Rancho; that she had no specific instructions in regard to such sale; that defendant referred to his correspondence with plaintiff, which she must see in order to determine whether she should act under the power of attorney or not. The foregoing constituted all the legal evidence offered to show a written contract, for the letter of June 19th from defendant to Mrs. Hancock cannot be considered in this connection, as we shall hereafter show.

We are satisfied that the writings so offered were not sufficient to prove a contract for the sale of the land, for at least two reasons. Conceding, for the purposes of argument, that

defendant's letters of May 14th and June 1st constituted an offer on his part to sell the land to plaintiff at one hundred dollars per acre, one fifth down, plaintiff's letter of June 9th was plainly a rejection of that offer, and defendant was no longer bound thereby. By that letter plaintiff, in effect, said to defendant: "Your price is too high. I cannot buy it. I have strained a point and will make one more offer. Twenty-three thousand five hundred dollars is the most I can pay— telegraph me, if you accept." While, unless expressly revoked, an offer will ordinarily remain open for a reasonable time, a rejection of the offer relieves the party making it from liability on that offer, and dispenses with the necessity of further revocation; and where an offer has once been rejected, the party rejecting cannot afterwards, at his option, accept the rejected offer, and thus convert the same into an agreement by acceptance. The consent of the party making the original offer must be again manifested, before there can be any contract. This is of course elementary. It is well settled that a proposal to accept, or acceptance of, an offer, on terms varying from those proposed, is a rejection of the offer, and puts an end to it. (See *Wristen* v. *Bowles,* 82 Cal. 87; *Meux* v. *Hogue,* 91 Cal. 448; 3 Am. & Eng. Ency. of Law, 853, and cases there cited.) A qualified acceptance is a new proposal. (Civ. Code, sec. 1585.) A party who submits a counter proposition instead of accepting an offer cannot abandon the substitute and accept the original offer without the other party's consent. (*Fox* v. *Turner,* 1 Ill. App. 153; *Ortman* v. *Weaver,* 11 Fed. 358; *Arthur* v. *Gordon,* 37 Fed. 558; *Hyde* v. *Wrench,* 3 Beav. 334.) The facts in the cases of *Arthur* v. *Gordon,* 37 Fed. 558, and *Hyde* v. *Wrench,* 3 Beav. 334, were in this respect practically the same as those in the case at bar, and in each case it was held that the counter proposition of the purchaser to buy for a smaller sum than that specified in the original offer was a rejection of such original offer, and that a subsequent accept-ance of the orginal offer was unavailing.

The case then stands as though on June 19th plaintiff made an offer to defendant to purchase this property at one hundred dollars per acre, and to bind the defendant his acceptance of the offer must have been manifested in writing. Otherwise, there was no binding agreement. Defendant's letter of June

CXL. Cal.—11

26th, returning the deed unexecuted, and referring plaintiff to Mrs. Hancock, cannot be construed as such an acceptance. The most that can be said of this letter in favor of plaintiff is, that in it defendant did not in terms refuse plaintiff's offer. Neither did he in terms accept it, and in the absence of such acceptance there could be no contract. The letter simply indicated that defendant would personally have nothing more to do with the matter, and that if plaintiff wished to continue his negotiations he must do so with defendant's agent. The letter of June 28th from Mrs. Hancock to plaintiff contains no intimation of any acceptance of plaintiff's proposition. Indeed, she expressly reserves therein the determination of the question as to whether she will act under her power of attorney or not.

Plaintiff places some reliance upon a letter written by defendant on June 19, 1900, to his sister, Mrs. Hancock, containing some statements regarding his negotiations with plaintiff, which, it is claimed, indicate that he had accepted plaintiff's offer, or at least considered himself bound. The contents of this letter were apparently not known to plaintiff until the trial, when, in obedience to his demand, it was produced from Mrs. Hancock's possession and offered in evidence. Aside from the fact that this letter does no more than to state what had transpired between plaintiff and defendant, to indicate that defendant himself probably thought that he was bound by plaintiff's attempted acceptance of his original offer, and to express his own dissatisfaction with the proposed price, instead of manifesting his assent, it constituted no part of the negotiations *between the parties.* It was a confidential letter from the defendant to his own agent, not intended to be a communication of consent to plaintiff, and, so far as appears, the contents were never communicated to plaintiff until the trial. The consent essential to a contract must be communicated by the parties *to each other,* and consent can be communicated with effect only by some act or omission of the party contracting, by which he intends to communicate it, or which necessarily tends to such communication. (Civ. Code, secs. 1565, 1581; *Leszynsky* v. *Meyer,* 53 Pac. (Cal.) 703.) It is also clear from the correspondence that it was the intention of the defendant that the negotiations between him and

plaintiff were to be purely preliminary, that he was to do
nothing more than let plaintiff know his price, and that he
was only proposing to enter into an agreement some of the
essential terms of which were not agreed upon and were to be
arranged with his agent in California. All through the cor-
respondence it is manifest that defendant insisted that plain-
tiff, having once ascertained in a general way what price
per acre plaintiff would take, should do his business with
defendant's agent. There is certainly nothing in the cor-
respondence to indicate that there was anything finally agreed
upon as to the terms of credit or the amount of interest on
deferred payments. These were matters that had to be settled
before the agreement could be considered to be finally settled.
(See Beach on Modern Law of Contracts, secs. 36, 62.)

In determining the question as to whether there was any
written contract or sufficient memorandum thereof, the evi-
dence offered as to the subsequent parol negotiations with
Mrs. Hancock was incompetent. It is not claimed that there
was ever any writing in connection therewith.

It is further claimed by respondent that there was no suffi-
cient description of the land to be sold contained in the various
writings relied upon to constitute a contract. It is unneces-
sary to consider this claim, in view of our conclusion as to the
insufficiency of those writings in the respects already desig-
nated. It was for the court to determine the question as to
whether or not the writings constituted an agreement between
the parties for the purchase and sale of the land. (*Wristen*
v. *Bowles,* 82 Cal. 87.) Its ruling that they did not constitute
such an agreement was correct, and there was no error in
sustaining the objection thereto.

The evidence offered did not tend to show any such part
performance of the alleged agreement as would take the case
out of the operation of the statute. There was nothing to
indicate any delivery of possession of the land to the vendee
or any taking of actual possession by him. It was conceded
that it was the understanding of all parties that the land was
in the actual possession of defendant's tenant, and was to re-
main in such tenant's possession for several months to come,
and that plaintiff was not to have possession until the expira-
tion of the lease. Under the circumstances appearing, the

mere going upon the land by permission of the tenant to make a survey was not a taking of possession of the land with the intent of carrying out and executing the agreement.

We find no substantial error in the rulings of the court. The evidence offered was insufficient to sustain a finding that there was a contract between these parties for the sale and purchase of this land.

The judgment and order are affirmed.

Shaw, J., and Van Dyke, J., concurred.

Hearing in Bank denied.