[Civ. No. 5366.   First Appellate District, Division One.—March 1, 1926.]

APEX ENGINEERING COMPANY (a Corporation), Appellant, v. NORTH AMERICAN OIL CONSOLIDATED (a Corporation), Respondent.

[1] CONTRACTS—PURCHASE OF HEAT EXCHANGER—OFFER AND ACCEPTANCE.—In this action to recover the purchase price of a certain heat exchanger manufactured by plaintiff for defendant, the plaintiff was not entitled to recover where the transaction amounted to an offer by the defendant, nonacceptance by the plaintiff, and a

---

1.  See 6 Cal. Jur. 53.

counter offer by plaintiff, which was rejected by the defendant; and even if defendant's offer had not been expressly withdrawn, the plaintiff would have been precluded, by reason of its rejection of such offer, from thereafter accepting the same.

(1) 13 **C. J.**, p. 296, n. 62; 35 **Cyc.**, p. 53, n. 44.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Edmund P. Mogan, Judge. Affirmed.

The facts are stated in the opinion of the court.

David J. Aaron for Appellant.

Harry G. McKannay for Respondent.

LANGDON, P. J.—This is an appeal from a judgment for the defendant in an action to recover $1,750, the agreed purchase price of a certain heat exchanger manufactured by plaintiff for the defendant.

The principle involved upon the appeal is fundamental in the law of contracts. It is presented by the following facts: On May 22, 1924, the representative of the defendant company gave to the representative of the plaintiff company an order for one "Heat Exchanger consisting of material as per letter of December 12, 1923," at a price of $1,750. This was termed an "emergency order" and contained the direction "please prepay freight and include in invoice." The heat exchanger was to be made up. On the reverse side of the order it was stated: "It is understood that this emergency order is entirely exhausted by the delivery of goods of one date and one invoice. . . . All goods delivered under this order must be receipted for on this order by person taking delivery and duplicate of this order sent at once to our purchasing department at Field Office, Taft, California, same to be followed by invoice (in triplicate) which shall cover all goods delivered under this order and none other."

This order was received from the defendant company by the president of the plaintiff company. The next day, upon his arrival at Los Angeles at the offices of the plaintiff company, he sent an acknowledgment of this order on behalf

of his company, together with an invoice calling for ''first payment on 1 Apex Heat Exchanger Unit @ $1750.00— $583.33.'' The terms in the acknowledgment of order were stated to be ''one-third with order. Bal. net 30 days 2% 10 days.'' Upon the date of the plaintiff's acknowledgment of order and invoice above mentioned (May 23, 1924), plaintiff also sent defendant a letter, which read, in part, as follows:

''We are attaching hereto our formal acknowledgment of your order No. 1525 which was given to the writer yesterday. We have entered our shop orders for this equipment and have been promised shipment of same on or before Saturday, June 14.

''The writer neglected to call your attention to the terms which we mentioned in our letter to Mr. Simons of December 12th which covers the payment of one-third with order, balance net cash thirty (30) days from date of invoice, with two per cent (2%) discount for payment of balance within ten (10) days from date of invoice. We trust you will pardon our oversight in not calling this to your attention at that time, and if convenient, we will appreciate receiving your check covering this first payment as soon as possible.''

At this point it may be well to inject an explanation of the ''letter to Mr. Simons'' mentioned above and the statement in the emergency order that the heat exchanger was to consist of ''material as per letter of December 12, 1923.'' Both statements refer to the same letter which had been written to an officer and employee of the Consolidated Mutual Oil Company. The plant of this company was acquired later by the defendant company, at which time Mr. Simons turned over the letter to the defendant company. The letter consists of several pages and describes numerous articles of equipment for an absorption plant and quotes prices therefor. These articles are absorption tower, steam still, heat exchangers, oil to oil and several others. Each article mentioned is described under a separate heading and following these various paragraphs is a paragraph relating to terms. The testimony in the record and the correspondence between the parties offered in evidence all go to show that the parties in their negotiations leading to the giving of the order involved here considered only the portion of the letter which described and quoted price for ''Heat

Exchangers, Oil to Oil,'' and that no mention was made of the portion of the letter relating to terms and no understanding was reached that the terms of payment for the heat exchanger were to be the unusual ones mentioned in this letter to a third party and attempted to be included in the order from the defendant by the acceptance, acknowledgment and invoice of the plaintiff.

The record shows that when the acknowledgment, invoice, and letter of May 23, 1924, were received at the office of the defendant, Mr. Kicrulff, who was handling the transaction for it, was away from Taft and that he did not return for about a week. Upon his return he wrote the plaintiff company as follows, under date of June 3, 1924: ''Referring to your letter of May 23, 1924, in which you ask for one third cash with order, we beg to say that we have cancelled our order #1525 for Heat Exchange Unit on account of unsatisfactory terms.''

Although it does not appear to be material, so far as the legal obligation of the defendant is concerned, it may be pertinent, nevertheless, upon the equities of the situation, to state that the record discloses that this action in canceling the order because of a variance in the terms of the acceptance by plaintiff was not an arbitrary and unreasonable one; that the order was an emergency order and that the heat exchanger was needed without delay; that there was no authority in anyone attached to the Taft office of the defendant company to sign a check of the company for the amount required for the advance payment; that Mr. Kierulff stated that it would have required about a week to get this check from the San Francisco office, and he wished to avoid this delay and inconvenience in securing the heat exchanger. He, therefore, placed his order elsewhere at the time he wrote to the plaintiff canceling the unaccepted order given to it.

Thereafter, there ensued some correspondence between the parties in which the plaintiff endeavored to have the defendant continue the order on the books under its usual terms, admitting that the plaintiff was at fault in not mentioning the unusual terms at the time the order was given, and stating that the work of building the heat exchanger was then about half completed. In reply to this letter defendant referred to the change in terms and insisted that the order had been canceled. The plaintiff, however, shipped the

equipment and when defendant would not accept it this action was brought.

We think the correspondence between the parties after the cancellation of the order was immaterial. Defendant objected to its introduction and its inclusion in the record adds no legal force to the position of either party. [1] The outstanding fact is that the defendant made an offer; that the plaintiff accepted it only with the addition of important new conditions, which was not a valid acceptance. Consequently, there was no contract between the parties. The fixed rule of law would preclude the plaintiff from thereafter accepting the offer as made, even if it had not been expressly withdrawn. But the defendant removed all doubt by withdrawing its unaccepted offer. The transaction amounted to an offer by the defendant, nonacceptance by the plaintiff, a counter-offer by plaintiff, which was rejected by the defendant.

If citation of authority be required for so elementary a legal proposition, it is available in the case of *Niles* v. *Hancock*, 140 Cal. 157 [73 Pac. 840], wherein it is said:

"While, unless expressly revoked, an offer will ordinarily remain open for a reasonable time, a rejection of the offer relieves the party making it from liability on that offer, and dispenses the necessity of further revocation; and where an offer has once been rejected, the party rejecting cannot afterwards, at his option, accept the rejected offer, and thus convert the same into an agreement by acceptance. The consent of the party making the original offer must be again manifested, before there can be any contract. This is of course elementary. It is well settled that a proposal to accept, or acceptance of, an offer, on terms varying from those proposed, is a rejection of the offer, and puts an end to it. (See *Wristen* v. *Bowles*, 82 Cal. 87 [22 Pac. 1136]; *Meux* v. *Hogue*, 91 Cal. 448 [27 Pac. 744]; 3 Am. & Eng. Ency. of Law, 853, and cases there cited.) A qualified acceptance is a new proposal. (Civ. Code, sec. 1585.) A party who submits a counter proposition instead of accepting an offer cannot abandon the substitute and accept the original offer without the other party's consent. (*Fox* v. *Turner*, 1 Ill. App. 153; *Ortman* v. *Weaver*, 11 Fed. 358; *Arthur* v. *Gordon*, 37 Fed. 558; *Hyde* v. *Wrench*, 3 Beav. 334.) The facts in the cases of *Arthur* v. *Gordon*, 37 Fed. 558, and

*Hyde* v. *Wrench,* 3 Beav. 334, were in this respect practically the same as those in the case at bar, and in each case it was held that the counter proposition of the purchaser to buy for a smaller sum than that specified in the original offer was a rejection of such original offer, and that a subsequent acceptance of the original offer was unavailing."

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.