[Civ. No. 3765.  Third Appellate District.—April 25, 1929.]

JOHN PETROTTA, Appellant, v. SAMUEL H. GERSON, Respondent.

Hoye & Boehler for Appellant.

M. J. Finkenstein and Harry A. Finkenstein for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a judgment for the defendant in an action to rescind a contract for the purchase of a pump, for the breach of an alleged covenant on the part of the vendor that it would elevate forty-one gallons of water each minute.

Pursuant to a written contract dated January 2, 1925, the respondent sold and delivered to the appellant at

Tujunga, California, and installed in his 320-foot well a Westco-Chippewa pump, for the agreed price of $1,892.42, upon which there was paid the sum of $630.80. By the terms of this contract, which was prepared upon a printed form, it was stipulated in part that with a lift or depth of 320 feet, by the use of a five horse-power motor, the pump would raise forty-one gallons of water each minute, except that the printed guaranty clause contained the following provision:

"The equipment described in these specifications was designed primarily to pump clear water and the company will not be responsible for damage caused by the presence in the water of any foreign matter."

Immediately following the last-quoted paragraph, which appeared in printed form, this statement was written with pen and ink:

"The company agrees in event pumping plant does not pump to capacity or is otherwise not acceptable to customer, they will refund initial payment of $630.80 and take back equipment."

Mingled with the water of the well there was a considerable amount of sand which seriously cut the leather valves in the cylinders, causing them to leak and thus greatly reduced the quantity of water which the pump would normally raise in a given period of time. After some experimenting the pump failed to produce more than thirty-two gallons of water per minute. An expert witness called on behalf of the respondent testified that this was wholly due to the damaged valves caused by the presence of sand in the water; that when this sand was substantially eliminated from the water, the valves could be renewed, and that this pump operating in a 320-foot well in fairly clear water, would elevate by means of a five horse-power motor, forty-one gallons of water each minute. On the foregoing account, the appellant became dissatisfied with the result of the action of the pump and complained of it to the vendor. Thereupon, in consideration of the appellant's executing and delivering to the respondent his "trade acceptance" pledge for $1,336.62, which was the balance of the purchase price of the pump including the accrued interest, the vendor signed a subsequent written agreement, March 25, 1926, guaranteeing that after the sand was eliminated from the water, and the valves

were renewed, the pump would deliver forty-one gallons of water per minute; that if it was discovered that the deficiency in the delivering capacity of the pump was not due to the effect of the sand, the pump would be repaired without cost to the appellant. This document read in part:

"Witnesseth—that whereas party of the second part (appellant) has this day completed his part of that certain contract of purchase entered into on January 5th, 1925, between the parties hereto, party of the first part (respondent) agrees as follows—

"(1) That if after pump has been allowed to operate until the water pumped is clear and free of sand or other foreign matter it does not deliver the rated capacity (41 gallons per minute) the plungers will be removed, examined, repaired or replaced, and reinstalled.

"(2) If it is found that the failure on the part of the equipment to deliver its rated capacity (41 G.P.M.) is due to any other cause than the presence of foreign matter in the water no charge will be made for the labor and material necessary to correct same.

"(3) If after examination it is found that the trouble is due to sand and/or other foreign matter, then the party of the second part agrees to pay for above mentioned labor and material.

"(4) It is hereby guaranteed that if well clears up and delivers clear water, the equipment will deliver its rated capacity of 41 GPM if the supply in the well is adequate and water level when pumping does not lower below 350 feet below pump head and party of the second part will be required to make no further payments on account of the purchase contract of January 5th, 1925, until pump is delivering its capacity of 41 GPM."

The sand, however, was not eliminated from the water. The appellant replaced the pump with one purchased from another firm and offered to return to the respondent the pump which is involved in this action, which was refused. On May 27, 1927, the appellant gave notice of rescission of the contract and commenced this action to cancel the contract and trade acceptance pledge for $1,336.62 and to recover the sum of $630.80 which had been paid on account of the purchase price. The defendant answered and filed cross-complaint for $1,336.62, the unpaid portion of the

purchase price of the pump. Judgment was rendered against the plaintiff and in favor of the defendant on his cross-complaint.

The appellant contends that the pen and ink paragraph of the original contract of January 2, 1925, which read: "The company agrees in event pumping plant does not pump to capacity or is otherwise not acceptable to customer, they will refund initial payment of $630.80 and take back equipment," constituted an unconditional guarantee that the pump would deliver forty-one gallons of water per minute regardless of the presence of sand in the water; that the pen and ink paragraph above quoted superseded and controlled the preceding printed portion of the contract; that he was privileged to reject the pump if it was not acceptable to him for any other reason, and that the findings and judgment are not supported by the evidence.

This case depends entirely upon the intent of the parties with respect to the guaranty, which must be ascertained by a construction of the contract. The facts are not seriously disputed.

Title three of the Civil Code furnishes the rules which will govern in the construction of this contract. It must be interpreted so as to give effect to the mutual intention of the parties. (6 Cal. Jur. 252, sec. 163.) Where the language is unambiguous the intention of the parties is to be ascertained from the writing alone. The contract is to be construed as a whole, so as to give effect to every clause and portion if reasonably possible. Where the written and printed portions of a contract are repugnant and irreconcilable, the written portion controls. (Sec. 1651, Civ. Code.) Repugnant clauses of a contract, however, should be reconciled if reasonably possible. (Sec. 1652, Civ. Code.) It is only when such repugnant clauses cannot be reasonably reconciled that the written part of a contract will control the printed portion. (*Jackson* v. *Snow*, 62 Cal. App. 56, 61 [216 Pac. 60]; 6 R. C. L. 848, sec. 239.)

With the foregoing principles of construction in mind, there seems to be little difficulty in determining the intent of the parties as expressed by the contract with respect to the guaranty of the quantity of water which the pump was expected to convey in a specified period of time.

The printed and written paragraphs of the guaranty appear to be reasonably susceptible of reconciliation.

It seems quite evident that the respondent intended to guarantee merely that the pump would handle forty-one gallons of water each minute provided the water was free from sand or other impeding impurities. It is unreasonable to expect any pump to convey its ordinary normal quantity of water when the water is permeated with a large amount of sand which destroys the efficient use of the valves. The contract specifically provided that the pump "was designed primarily to pump *clear water*, and the company will not be responsible for damage caused by the presence in the water of any foreign matter." It is not unreasonable to construe the succeeding written paragraph to mean that provided the water is reasonably clear and free from sand or other foreign substance, the vendor "will refund the initial payment of $630.80, and take back the equipment," if, under such circumstances the "pumping plant does not pump to capacity" of forty-one gallons per minute. This is a mere assurance that the normal capacity of the pump was guaranteed to be forty-one gallons per minute, under ordinary conditions with the water reasonably free from sand or other foreign substance. The case of *Retsloff* v. *Smith,* 79 Cal. App. 443 [249 Pac. 886], which is relied upon by appellants as authority for the assertion that a written clause in a contract supersedes and destroys a printed clause regardless of whether they may be reasonably reconciled or not, fails to support his claim. In that case neither the printed nor the written portion of the contract was impaired or destroyed. The court says: "This construction does not nullify the former provision, but harmonizes the two, and gives both provisions life and meaning." This is precisely what the recognized rules of construction require of a court if it is reasonably possible. Moreover, it is evident from the unequivocal language of the subsequent written agreement of March 25, 1926, above quoted, that the parties to this action so construed the guaranty. The latter instrument, which specifically referred to the former contract, and which purports to construe the guaranty as to the capacity of the pump, may properly be considered in determining the intent of the parties. (6 R. C. L. 850, sec. 240.)

Nor does the clause in the written portion of the guar-

anty to the effect that the contract may be avoided if the "pumping plant does not pump to capacity, or is *otherwise not acceptable* to customer," authorize the vendee to reject the pump or repudiate the contract upon mere whim or caprice. This clause should be construed in connection with the entire contract with a view of ascertaining the extent and nature of the guaranty intended by the parties. The subject under consideration which led to the use of the clause pursuant to which the appellant claims the right to reject the pump for no other reason than that it was "not acceptable" to him, was the guaranty of the mechanical operation of a machine to pump water from a well. This would not justify the rejecting of the plant merely because the buyer disliked its appearance or because it was not painted to suit him or for any other trivial reason. Under certain circumstances such language may authorize an arbitrary option to reject a purchased article. But in the absence of language clearly indicating such arbitrary authority, and where the mere mechanical operation of a machine is involved there must be reasonable cause for rejecting it. In 6 Ruling Case Law, at page 954, it is said: "A distinction has been drawn between cases where the fancy, taste, sensibilty or judgment of the promisor are involved, and cases where only operative fitness or mechanical utility is involved. In the latter class of cases the subject matter of the contract is such that the satisfaction stipulated for must be held to apply to quality, workmanship, stability, and other like considerations, rather than to personal satisfaction." In applying the principle of this distinction, there may be some confusion of authorities, but there can be no question that the present case belongs to the class which does not authorize an arbitrary rescission without reason, but rather depends upon the existence of some mechanical defect of the pump. No defect except the lack of the capacity of the pump has been urged by the appellant. This clause will therefore not justify the rejecting of the pump or the rescission of the contract without reason.

The case of *Tiffany* v. *Pacific Sewer Pipe Co.*, 180 Cal. 700 [6 A. L. R. 1493, 182 Pac. 428], which is relied upon by the appellant, clearly belongs to the class of cases which confers arbitrary power to act. It was a suit for damages for breach of a contract to employ an expert workman to

finish the manufacture of glazed brick. The plaintiff was entitled to retain his employment so long as he finished "a product satisfactory to the defendant." His work was not satisfactory, and he was discharged. The court said: "Quality was also important, for if the glaze was not rightly mixed it .would scale off, or crack after being burned and if the color or transparency was not satisfactory to purchasers, the brick would not be as easily sold." In an employment consisting of an occupation that required the exercise of .taste or the approval of color and appearance which are difficult to standardize it was properly held that the workman could be discharged under the provisions of the contract without assigning specific defects of the product or incapacity on the part of the workman. That case is therefore readily distinguished from the present action.

In view of the foregoing principles of law, it becomes immaterial whether the finding that plaintiff refused to permit the defendant to repair the cylinder valves, is supported by the evidence or not. We are of the opinion, however, that the findings are amply supported by the evidence.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.