[Civ. No. 6230.   Second Appellate District, Division One.—August 8, 1929.]

JONES–McLAUGHLIN, INC. (a Corporation), Respondent, v. THOMAS KELLY et al., Appellants.

Claud B. Andrews and John C. Gillham for Appellants.

Andrew J. Copp, Jr., for Respondent.

HOLLZER, J., *pro tem.*—Defendants appeal from a judgment awarded to plaintiff for the contract price of certain machinery, sold and installed by the latter at a certain oil-well.

It is conceded that the parties entered into a contract whereby the respondent was to sell and install a certain electric motor and compressor on the appellants' well, that the parties intended that there should be a thirty-day test on this compressor following the installation, that on May 31, 1926, respondent completed the installation of said machinery, the same being attached to a concrete foundation imbedded in the ground adjoining said well, that the period for making said test was extended until July 26, 1926, that on the last-mentioned date appellants notified the respondent to remove the machinery, and that the same was used by appellants continuously from May 31 to August 6, 1926, on which date they disconnected the compressor from the well. The amount of the judgment, likewise, is not in dispute.

Appellants contend that the agreement made between the parties granted to them the option to reject the machinery if the same should not prove satisfactory to them, and that having rejected the same in good faith, they cannot be held liable for the purchase price.

Although five separate grounds are assigned upon which it is claimed the judgment should be reversed, all of the points presented arise out of one and the same issue, namely: Did the contract in question entitle appellants to reject the machinery merely if they were dissatisfied with it, or were they obligated to pay for the same if the machinery proved to be such as would be satisfactory to a reasonable person?

It becomes necessary, therefore, to determine what was the contract which these parties made.

Under date of May 1, 1926, respondent submitted to appellants a written offer to install said machinery, said offer containing, among other provisions, the following: "Thirty days' time will be allowed in which you can satisfy yourself whether or not you wish to keep the machinery. At the end of the thirty days you will have the option of buying the machinery at the above price, or rejecting it, under which option we are to remove it without any expense to you. . . . We are making the foregoing offer to install machinery upon trial and at our own expense *with the understanding that we are to be granted at least ten days if we desire to make such tests as may be necessary to demonstrate the workability of the system at the well.* Furthermore, *in the event that the well proves to be incapable of yielding oil in satisfactory amounts under this process, we want the right to make a test on your Casa Blanca Well No. 1 before removing the machinery, for the purpose of determining whether that well is capable of satisfactorily producing under the process. . . . In the event that we make a substantial and satisfactory showing at the Donley-Barteaux Well we shall expect to make an arrangement with you under similar terms to the above for the purpose of installing machinery and producing oil from the Casa Blanca Well No. 1 and such other wells which you have in the immediate vicinity."*

Under date of May 3, 1926, the appellants sent to respondent a communication which, omitting nonessential portions, read as follows:

"In reply to your letter of May 1st regarding the installation of your electric motor and compressor on the Donley-Barteaux well . . . please enter our order to install the above equipment on the following conditions:

"Thirty (30) days after the installation, we agree to pay your company Three Thousand Two Hundred Twenty-two Dollars ($3,222.00) for your electric motor, compressor and appliances, *providing the production of the well has been sufficiently increased.*

"*If we decide to keep the compressor, and it is, in our{ opinion, entirely satisfactory,* we further agree, at the end of sixty (60) days, to pay you an additional Twenty-five Hundred Dollars ($2500.00) for your patents on this machinery covered by patent No. 1,102,152.

"*Should this compressor not produce satisfactory results, you are to remove the same and we are to be put to no expense whatsoever.* . . . "

At the bottom of the last-mentioned communication the respondent wrote the following:

"Accepted: Jones-McLaughlin, Inc., by R. P. McLaughlin, May 3, 1926."

Thereafter, under date of June 24, 1926, appellant wrote to respondent requesting an extension of the period within which they might test the machinery. In the opening sentence of that communication they wrote: "According to the terms of our *agreement* with you bearing date of *May 3, 1926*," etc. (Italics, in the foregoing quotations, are ours.)

It is the contention of appellants that the letter of May 1, 1926, constituted a part of the contract entered into by the parties; that, by virtue of the provisions of that letter, they merely took an option to purchase the machinery, with permission to test the same; and that, having rejected it, they could not be held liable for the purchase price thereof.

Admittedly the letter of May 1, 1926, constituted respondent's original offer to sell and install the machinery in question. However, unless such offer was accepted, the conditions specified in that letter did not become part of any contract.

In *Niles* v. *Hancock,* 140 Cal. 157 [73 Pac. 840, 841], the court declared: "It is well settled that a proposal to accept or acceptance of, an offer, on terms varying from those proposed, is a rejection of the offer, and puts an end to it. (See *Wristen* v. *Bowles,* 82 Cal. 87 [22 Pac. 1136]; *Meux* v. *Hogue,* 91 Cal. 448 [27 Pac. 744]; 3 Am. & Eng. Ency. of Law, 853, and cases there cited.) A qualified acceptance is a new proposal. (Civ. Code, sec. 1585.) A party who

submits a counter-proposition instead of accepting an offer cannot abandon the substitute and accept the original offer without the other party's consent.'' (Citing cases.)

▪ In their proposal of May 1st, the respondent specified the conditions under which its offer was made, and among these were the following:

First. Respondent was to be granted at least ten days, if desired, to make such tests as might be necessary to demonstrate the workability of its system at the well.

Second.. If that well proved incapable of yielding oil in satisfactory amounts under respondent's process, the latter was to have the right to make a test on appellants' Casa Blanca Well No. 1, before removing its machinery, in order to determine whether the latter well was capable of satisfactorily producing under the equipment in question.

Third. If a substantial and satisfactory showing should be made at the first well, respondent was to be given a contract under similar terms to install its machinery on said Casa Blanca well, and also all other wells belonging to appellants in the immediate vicinity.

On the other hand, while appellants' reply of May 3d declared their willingness to order the installation of the equipment in question in conformity to most of the conditions enumerated in respondent's offer, it is clear that all three of the above-mentioned conditions were omitted from their so-called acceptance.

Appellants' reply, therefore, was not an unqualified acceptance of respondent's proposal, and hence itself became a new offer.

Furthermore, the parties themselves construed the letter of May 3d, coupled with respondent's acceptance thereof, as being the contract which fixed their respective rights and obligations. This is established not only by the circumstance that the respondent wrote its acceptance at the bottom of that letter, but by the further fact that in their request for an extension of time within which to test the equipment, appellants designated the contract as being ''our agreement with you, bearing date of *May 3, 1926*.'' In addition, the answer of the defendants similarly described the contract, and in pleading the substance thereof omitted all reference to the above-mentioned three conditions incorporated in the offer of May 1st. It follows, therefore, that

the provisions contained in the offer of May 1st formed no part of the contract made by the parties herein.

It is next urged that even under the terms of the agreement of May 3, 1926, appellants had the absolute right to accept or reject the machinery. The principle upon which this argument is advanced, appellants assert, was defined by the Supreme Court in the case of *Tiffany* v. *Pacific Sewer Pipe Co.*, 180 Cal. 700 [6 A. L. R. 1493, 182 Pac. 428]. The court there said (pp. 702, 703):

"The law governing the rights of the parties under a contract which requires one party to do something which is satisfactory to the other party is thus stated in 13 Corpus Juris, at page 675, 'Contracts in which one party agrees to perform to the satisfaction of the other are ordinarily divided into two classes: (1) Where fancy, taste, sensibility, or judgment are involved; and (2) where the question is merely one of operative fitness or mechanical utility. In contracts involving matters of fancy, taste, or judgment, when one party agrees to perform to the satisfaction of the other, he renders the other party the sole judge of his satisfaction without regard to the justice or reasonableness of his decision, and a court or jury cannot say that such a party should have been satisfied where he asserts that he is not.' (Sec. 768.)"

The Tiffany case, however, was one involving a contract for personal services, the agreement there providing that the employee would not hold his employer liable if for any reason the latter should be unable to turn out enameled and glazed brick satisfactory to it.

On the other hand, as pointed out by the court in that decision, Elliot states the rule to be with respect to the second class of contracts, that such an agreement "does not justify the promisor in arbitrarily, unreasonably and capriciously claiming that he is not satisfied, in order to evade liability, and the courts in doubtful cases, especially when the thing furnished is so attached to the real property of the buyer that its value would be lost to the seller, either wholly or in great part, unless paid for, are inclined to construe such a stipulation as one to furnish such a thing as ought reasonably to satisfy the buyer."

A case analogous to the present suit was that of *Thomas Haverty Co.* v. *Jones*, 185 Cal. 285 [197 Pac. 105]. In that

action, the contractor recovered judgment upon an agreement to install the plumbing, steam-heating and ventilation plant in a four-story building, to the satisfaction of the owner, although the latter claimed that the plant was not satisfactory. In affirming the judgment, the Supreme Court, at page 296, declared:

"The finding of the court that the contract was performed in such a manner as should be satisfactory to a reasonable person is sufficient to entitle the plaintiff to recover in the action, so far as that point is concerned. As was stated by the District Court of Appeal 'a stipulation in the contract to perform to the satisfaction of one of the parties only calls for such performance as should be satisfactory to a reasonable person.' (Citing cases.) This rule does not apply where the performance involves matters dependent on fancy, taste, sensibility or judgment of the other party, but it does apply where the question is merely one of operative fitness or mechanical utility, and especially to contracts for the erection of buildings. (*Tiffany* v. *Pacific Sewer Pipe Co.*, 180 Cal. 702 [6 A. L. R. 1493, 182 Pac. 428].)"

The recent decision of *Petrotta* v. *Gerson*, 98 Cal. App. 507 [277 Pac. 167, 168], is very much in point. That case arose out of an agreement to install a pump on a water well. The contract was prepared upon a printed form, which described the pump and specified its capacity. In addition, the agreement contained a stipulation, written in longhand, and reading, "The company agrees in event pumping plant does not pump to capacity, or is otherwise not acceptable to customer, they will refund initial payment of $630.80 and take back the equipment." In affirming a judgment awarded to the vendor, the court there said, p. 512:

"The contract is to be construed as a whole, so as to give effect to every clause and portion if reasonably possible. . . . Nor does the clause in the written portion of the guarantee to the effect that the contract may be avoided if the 'pumping plant does not pump to capacity, or is otherwise not acceptable to customer,' authorize the vendee to reject the pump or repudiate the contract upon mere whim or caprice. This clause should be construed in connection with the entire contract with a view of ascertaining the extent and nature of the guarantee intended by the parties.

The subject under consideration, which led to the use of the clause pursuant to which the appellant claims the right to reject the pump for no other reason than it was 'not acceptable' to him, was the guarantee of the mechanical operation of a machine to pump water from a well. This would not justify the rejecting of the plant merely because the buyer disliked its appearance, or because it was not painted to suit him, or for any other trivial reason. Under certain circumstances, such language may authorize an arbitrary option to reject a purchased article. But, in the absence of language clearly indicating such arbitrary authority and where the mechanical operation of a machine is involved, there must be reasonable cause for rejecting it. (Citing 6 Ruling Case Law, 954.) . . . The case of *Tiffany* v. *Pacific S. P. Co.*, 180 Cal. 700 [6 A. L. R. 1493, 182 Pac. 428], which is relied upon by the appellant, clearly belongs to the class of cases which confers arbitrary power to act."

In the present action, no agreement for personal services is involved. Here, appellant promised to pay the first installment of the purchase price thirty days after the installation of the machinery, "providing the production of the well has been sufficiently increased." The balance of the purchase price was to be paid sixty days after installation, "if we decide to keep the compressor and it is, in our opinion, entirely satisfactory." Finally, the respondent was obligated to remove it, "should this compressor not produce satisfactory results."

What did the parties mean by the expression, "providing the production of the well has been sufficiently increased"?

What was intended by the remaining stipulations above quoted?

It is clear that the contract itself supplies no definition of these terms. The agreement is therefore incomplete, if not ambiguous in this respect. Hence we must go outside of the contract, and look to the circumstances surrounding the transaction at the time it was made, in order to ascertain the meaning of these terms.

In *Morse* v. *Tochterman*, 21 Cal. App. 726 [132 Pac. 1055, 1057], the court declared "It is very manifest that the words 'ready for occupancy' which are used in the lease as descriptive of the condition in which it was intended and understood that the premises should be placed before

the lessees were required to accept or take possession thereof, are general, vague and indefinite as to their exact meaning and scope, and that, to secure a full explanation of the precise meaning they were intended to bear it was requisite to examine testimony extrinsic to the instrument itself. . . . The rule is well settled that, 'where the writing does not show upon its face that it was intended to express the whole agreement between the parties, parol evidence is admissible to show other conditions or latent ambiguities.' (Citing *Williams* v. *Ashhurst, etc. Oil Co.*, 144 Cal. 619, 624 [78 Pac. 28] and other cases.)''

In the action at bar, the evidence showed, and the trial court found that at the time of the making of said contract the parties orally agreed that defendants' satisfaction was to depend and be based solely upon the production of oil and gasoline at the well during the test period, and that defendants would be satisfied if the oil and gasoline produced at said well during said test period would be increased by an average of fifty barrels per day.

Likewise, it is not disputed that, as a direct result of the operation and use of the machinery installed by respondent, the oil and gasoline produced at said well was increased by an average of fifty barrels per day throughout said test period.

Finally the lower court found upon adequate evidence that the increase thus produced was such as would have been satisfactory to a reasonable person, and that in rejecting said machinery the defendants were arbitrary, capricious and unreasonable.

It is clear that the contract in the present suit was one involving the operative fitness or mechanical utility of certain equipment attached to a concrete foundation imbedded in the ground adjoining an oil-well belonging to the purchaser. Likewise, it cannot be seriously questioned that the equipment here furnished was so attached to the real property that, unless paid for, its value would be lost in great part to the seller.

Construing the agreement as a whole, so as to harmonize its various provisions and thus give effect to every portion thereof, and considering further the nature of the contract, we are of the opinion that the appellants agreed that the equipment would be accepted as satisfactory, if the com-

pressor produced satisfactory results, and that by satisfactory results they meant an adequate increase in the production of the well. Thus construed, we hold, in view of the evidence introduced in the court below, that under the contract here made the appellants agreed to pay for the equipment, providing the production of the well should be sufficiently increased, and that an increase in the production to the extent of an average of fifty barrels per day, during the period allowed for testing the machinery, would be accepted as a sufficient increase.

Since the lower court found, and the evidence abundantly proved, that the machinery installed by respondent met all of the foregoing requirements, it follows that the appellants are liable for the purchase price.

The three remaining points presented by appellants relate to rulings of the lower court admitting, over their objections, testimony to the effect that they orally agreed they would be satisfied with the compressor if the production of the well would be increased from 350 to 400 barrels per day, also testimony as to the amount of the production of the well, and also testimony respecting the sum expended by respondent to install the compressor. In view of the conclusion heretofore announced respecting the construction of the contract made between the parties, we hold that no error was committed in admitting said evidence.

For the foregoing reasons the judgment is affirmed.

Conrey, P. J., concurred.

Houser, J., absent.