[Civ. No. 4096. Third Appellate District.—June 21, 1930.]

GLADYS G. BRANCH, etc., Respondent, v. BEKINS VAN AND STORAGE COMPANY (a Corporation), Appellant.

H. S. Clewett for Appellant.

Knight & Reynolds for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a judgment for damages in an action for conversion growing out of the wrongful delivery of household goods to an officer upon a writ of attachment by a warehouseman with whom the goods had been stored.

The plaintiff is the wife of C. U. Branch, to whom she was married in June, 1917. They were living in a rented house at number 855 Ridgewood Place, Hollywood. The household goods and personal effects which are involved in this action were the separate property of the plaintiff, having been acquired by her prior to her marriage. The appellant is a warehouseman engaged in a storage and transfer business conducted for hire, in Los Angeles. Mr. and Mrs. Branch had planned to go east. March 24, 1925, at the request of the plaintiff, Mr. Cooper, who is an agent

for the appellant, called at her residence and arranged to crate, haul and store all of her household goods. Mr. Branch was then in San Francisco, and had nothing to do with storing the goods. Mr. Cooper testified regarding these negotiations that at the request of plaintiff he went to the house and discussed the matter with her. "I asked Mrs. Branch in what name she wished the goods stored, and she told me C. U. Branch. That is the name I wrote upon this order at that time." It appears that under date of March 24, 1925, he did fill out and procure her to sign an order for removal of the goods for storage, which order contained the following language:

"This will be your authority to remove goods *belonging to C. U. Branch* . . . Mail warehouse or shipping receipt to Mrs. B. M. Green, c/o St. Lukes Hospital, Kearney, Nebraska. . . .

"(Signed)   MRS. C. U. BRANCH."

Regarding this transaction, the plaintiff was permitted to testify over the objection of appellant upon the ground that the evidence tends to vary the terms of a written instrument that she called Mr. Cooper on the telephone after he had returned to his office on March 24th and informed him as follows: "I said 'Mr. Cooper . . . the slip you left with me which I signed, you made out to C. U. Branch, and it should have been made out "Mrs. C. U. Branch."' He said, 'All right, Mrs. Branch, I will correct that for you.'"

This is the only document involving this storage transaction in which the name of C. U. Branch appears as owner of the property, except that the appellant's ledger account of the matter was entered without the knowledge of plaintiff in the name of "Branch, C. U." Both of the other permits to remove the goods procured by the drivers of the respective vans had the name of Mrs. C. U. Branch at the top, indicating that she was the only person with whom the appellant was dealing. Moreover, the foregoing order, upon which the appellant relies as authority for delivering the goods to the officer under a writ of attachment, does not purport to be a contract for anything except the removal of the goods from the residence and a waiver on the part of the owner of certain specified risks. It was

a mere unilateral authorization to move the goods. It is not signed by the appellant. It is not a warehouse receipt.

On April 1st a van and driver arrived at plaintiff's home from appellant's warehouse and removed the goods. Mrs. Branch then made and retained an itemized statement of the number and contents of the several packages. Pursuant to custom the driver filled out a printed blank permit to remove and store the goods which was signed only by the plaintiff "Mrs. C. U. Branch" and retained by the driver. At the top of this authorization appeared the following indication of the identity of the contracting owner, "Name, Mrs. C. U. Branch." This permit also contained the following notice: "Mail receipt to Curtis Hotel, Mpls. Minn." The middle initial in the foregoing name as it appears both times in this document is erroneously typed "Y," instead of "U." There is no controversy over the fact that Mrs. C. U. Branch was intended to have been used and is the correct name. After the household goods had been removed from their home, Mr. and Mrs. Branch lived temporarily with their friend, Mrs. Powell, at number 434 South Rampart Boulevard, Los Angeles. While the plaintiff was at this last-mentioned place, on April 15th, she again called by phone the appellant's warehouse and requested them to send for two other articles to store with her furniture, namely, a sanitary cot and mattress and a victrola. The driver took these articles and again required the plaintiff to sign an authorization to remove and store the goods similar to the one above mentioned. This was also retained by the driver. This permit was properly dated April 15th, and was headed, "Name, Mrs. Branch." It was signed by the plaintiff, "Mrs. C. U. Branch," and contained the notice, "Mail receipt to St. Lukes Hospital, Kearney, Neb." April 26th, Mr. and Mrs. Branch left Los Angeles and went east. It appears that they stopped for a few days at Kearney, Nebraska. The plaintiff had at least three letters forwarded to her through the Nebraska address which appears in the last-mentioned authorization. They then proceeded to Minneapolis, stopping for a brief time at the Curtis Hotel above mentioned. They then moved to the Plymouth Building in Minneapolis.

Before leaving Los Angeles and about April 8th a suit in *assumpsit* for the sum of $140 was commenced against

the husband of this plaintiff by J. A. Ford. Mrs. Branch was not a party to this action. The complaint was served upon Mr. Branch personally at the office of Mr. Ford. A writ of attachment was issued in that proceeding. There is no record of this writ having been served upon Mr. Branch. He testified that the proceedings in attachment were never served upon him; that he knew nothing about the attachment; that he was trying to arrange to settle the claim of Mr. Ford, who told him he had filed the suit merely as a matter of protection and that he need not worry about the action. Mr. Branch did not tell his wife of this suit and she had no knowledge that it was pending. On April 8th, while Mr. and Mrs. Branch were still living at number 434 Rampart Boulevard, Los Angeles, and before the appellant called there for the removal of the last-mentioned articles of household goods the officer of the court in which the Ford suit was pending served and levied upon the appellant a garnishment and attachment of the plaintiff's household goods, which were then in the possession of the appellant. The appellant on said eighth day of April declared to the attaching officer in writing that, "I have in my possession and under my control personal property belonging to said defendant [Mr. Branch] to-wit: Goods in Storage." Appellant thereupon delivered the goods to the officer. Subsequently, on May 1st, judgment by default having been previously entered against Mr. Branch, the plaintiff's separate property, which she valued at $6,000, was sold under attachment to Ford for the sum of $140. Ford then received and retained possession of the goods. Before turning the plaintiff's household goods over to the officer under the writ of attachment, the appellant sent a letter dated April 9, 1925, addressed to C. U. Branch at the Curtis Hotel, Minneapolis, Minn., advising him that "We have been served this date with writ of attachment #170706, attaching goods stored with us under your name," and recommending that action be taken to release the goods. This notice was returned to the appellant unclaimed on May 4, 1925. No other notice of the attachment was sent to any other address. No notice whatever was sent to the plaintiff. Nor was the plaintiff informed of this attachment by the appellant when they called at number 434 South Rampart Boulevard, Los An-

geles, on April 15th, for the last consignment of furniture for storage, or at any other time.

Having received no warehouse receipt for the storing of goods, the plaintiff on June 6, 1925, sent the following letter to the appellant:

"On March 31 or April 1st, 1925, we stored our household goods at your warehouse. We gave you an address to forward storage receipt, but to date we have not (received the receipt) from your company. Will you kindly forward storage receipt at once. Please forward to 238 Plymouth Bldg., Minneapolis.

"Yours very truly,
"(Signed)  MRS. C. U. BRANCH."

June 13, 1925, the appellant, in reply to the foregoing inquiry, sent the plaintiff a letter addressed to her at the Plymouth Building, Minneapolis, informing her of the attachment and sale of her goods. This letter reached her at that address. It was her first information regarding the attachment or sale. Upon receipt of the foregoing letter Mr. Branch promptly wired Ford, on June 18th, as follows:

"What amount required release furniture. Will wire funds. Wire.

"(Signed)  CHARLES U. BRANCH."

Ford replied by wire the same day:

"Everything sold public auction probably month ago.
"(Signed)  J. A. FORD."

Demand was then made on the appellant by the plaintiff for a delivery of her goods, which was refused. This suit for conversion was then commenced.

The appellant claims, (1) that the written order for removal of the household goods signed by the plaintiff in which the name of C. U. Branch appears as owner of the goods estops her from now asserting it was her separate property, (2) that the appellant, as a warehouseman, is not liable for damages since the goods were taken from its custody by means of an attachment in a legal proceeding, and (3) that the amount of damages is excessive.

■ The appellant was negligent in failing to exercise diligence in notifying the owner of the goods concerning the attachment. This renders the Storage Company liable for

conversion unless the plaintiff is estopped from maintaining this action because she signed the permit to remove the goods in which it was recited that C. U. Branch was the owner of the property.

The plaintiff was entitled to a warehouse receipt for the storage of her household goods. Apparently the appellant neglected to issue or deliver this receipt. Had this receipt been delivered the property in the custody of the warehouseman would have been exempt from attachment. The appellant was negligent in failing to issue this receipt. Section 25 of the California Warehouse Act (Stats. 1909, p. 437, amended Stats. 1919, p. 398; Stats. 1923, p. 676; 2 Deering's Gen. Laws, p. 3724) provides in part:

"If goods are delivered to a warehouseman by the owner, . . . and a negotiable receipt is issued for them, they cannot thereafter, while in the possession of the warehouseman, be attached by garnishment or otherwise, or be levied upon under an execution, unless the receipt be first surrendered to the warehouseman, or its negotiation enjoined. . . . "

The principle is well established that a bailee is liable in conversion for delivering goods upon the claim of a third party except under valid legal process in a suit in which the bailor is himself a party and then only after due notice has been given the bailor. The text in 6 California Jurisprudence, page 1142, section 95, declares:

"A seizure under process, in order to exonerate the bailee, must be such as is set in motion directly against the bailor in a suit to which the latter is a party. . . . Even where the property is taken from the custody of the bailee by a valid legal process, he must give notice thereof to the bailor within a reasonable time or he will be liable for a conversion." (3 R. C. L., p. 89, sec. 18.)

In accordance with this doctrine, since the plaintiff in the present case, who is both the bailor and owner of the household goods, was not a party to the action in which the attachment was issued, the surrender of the property by the appellant will furnish no defense to the action for conversion.

The appellant had ample notice of the plaintiff's claim of ownership of the property to charge the Storage Company with the duty of notifying her of the attachment. No

effort whatever was made to notify her. The plaintiff told Mr. Cooper, the agent of appellant, that she owned the property. Without objection she was permitted to testify: "I told him that this was my furniture, and I wanted it stored under [the name] Mrs. C. U. Branch; the furniture belonged to me. Q. What did he say? A. He said, 'All right, Mrs. Branch.' " Both of the written permits to remove the property from the residence which were procured by the appellant's drivers at the times when they called to transfer the goods to the warehouse contained the sole name of Mrs. C. U. Branch at the top indicating that she was the only person with whom they were dealing in the storage transaction. She signed each of these permits in the same manner. The first order for transferring the property for storing which was procured by Mr. Cooper on March 24th and the last permit, which was signed April 15th, contained a notice of the plaintiff's forwarding address as "Care of St. Luke's Hospital, Kearney, Nebraska." While Mr. and Mrs. Branch were in Minneapolis during April and May, she received several letters from other individuals which were forwarded by means of the Nebraska address. Yet the appellant sent no notice of the attachment to this address. It is true that the second permit, which was signed by the plaintiff on April 1st, contained a forwarding address as "Curtis Hotel, Minneapolis," and that the appellant sent a notice of the attachment directed to C. U. Branch to this last-mentioned address, which was returned unclaimed. It is also true that at the request of the plaintiff the appellant sent its teamsters to number 434 South Rampart Boulevard, Los Angeles, on April 15th before the property had been sold on attachment. The attachment had been levied on the property a week before this. The representatives of the appellant personally interviewed the plaintiff on this occasion. Certainly the appellant then knew where to locate the plaintiff. Yet nothing was said about the attachment. On May 4th, upon the return of the unclaimed notice, which the appellant sent to C. U. Branch at the Curtis Hotel, Minneapolis, there still remained three days before the sale of the property occurred. This returned notice should have stimulated the appellant to activity to at least attempt to warn the plaintiff of the threatened sale. If the Storage Company had checked up

on the information in its own possession, there would have been little trouble in locating the owner of the property. No such effort was made. Under such circumstances it may not be said the appellant used due diligence to notify the owner of the attachment and threatened sale of her property. This negligence, therefore, renders the Storage Company liable for conversion.

Section 10 of the California Warehouse Act provides:

"Where a warehouseman delivers the goods to one who is not in fact lawfully entitled to the possession of them, the warehouseman shall be liable as for conversion to all having a right of property or possession in the goods . . . if prior to such delivery he . . . (b) Had information that the delivery about to be made was to one not lawfully entitled to the possession of the goods."

Section 21 of the same act further provides that:

"A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise . . . "

Section 1822 of the Civil Code provides that a depositary of goods must deliver them on demand to the person for whose benefit they were deposited "unless he has a lien upon the thing deposited, or has been forbidden or prevented from doing so by the real owner thereof, or by the act of the law, *and has given the notice required by section eighteen hundred and twenty-five.*" (Italics ours.)

Section 1825 of the Civil Code provides:

"A depositary must give prompt notice to the person for whose benefit the deposit was made, of any proceedings taken adversely to his interest in the thing deposited, which may tend to excuse the depositary from delivering the thing to him."

There is ample evidence in the present case of a lack of diligence on the part of the appellant to notify the depositor of the goods of the attachment, as well as knowledge of the plaintiff's claim of ownership of the property to render the appellant liable for conversion thereof.

Nor do we think the conduct of the plaintiff, as disclosed by the facts of this case, constitutes an equitable estoppel which prevents her from asserting a claim to the ownership of the property.

The document upon which the appellant relies for this defense was in no sense a complete contract between the parties. It was not signed by the appellant. It was a mere authorization to move the goods from the home to the warehouse. It does not purport to contain all the terms of the bailment. The obligation of the appellant grows out of a breach of its duty as a bailee, rather than the mere transferring of the goods to the warehouse. The very agent who filled into this permit the name C. U. Branch as the owner of the property was previously told by the plaintiff at that interview that the household goods belonged to her and she wanted them stored in the name of "Mrs. C. U. Branch." The language of the very instrument itself is ambiguous with respect to the ownership. It begins as follows: "This will be your authority to remove goods [from the home] belonging to C. U. Branch." It was a printed slip. The only portion of the foregoing language which was written in by the agent of appellant was the name. This authorization then closed with the use of the following declaration: "Account also subject to the order of Mrs. C. U. Branch." ■ This ambiguity as to the ownership of the goods rendered competent oral testimony regarding that subject. At the trial the plaintiff testified that she discovered the omission of the term "Mrs." preceding the name by which she negotiated for the removal of the goods and promptly called Mr. Cooper, the agent, on the phone and informed him, "The slip you left with me which I signed, you made out to C. U. Branch, and it should have been made out 'Mrs. C. U. Branch,'" to which he replied: "All right, Mrs. Branch, I will correct that for you." Moreover, in the transaction of moving the goods, two other permits similar to this document so far as their purpose is concerned were filled out and signed by the appellant in the same manner in the name of "Mrs. C. U. Branch." At the beginning of each of these permits appeared the following: "Name, Mrs. C. U. Branch." The use of this name in the document was evidently intended to indicate the party with whom the warehouseman was dealing. In spite of the error in the first-mentioned document, all three of these similar permits should be construed together and they will not justify the appellant in assuming that the property be-

longed to anyone other than the plaintiff with whom it was personally dealing. While it is true that the plaintiff's real initials were "G. G." and not "C. U.," she was conducting the transaction with the use of her husband's initials, designating herself as Mrs. C. U. Branch. It does not appear that her husband's name was mentioned in the entire course of the transaction. Our attention is not called to any evidence which indicates that the agent who filled out this erroneous permit, except for the use of the prefix "Mrs.," even knew that the plaintiff was a married woman. Ordinarily the use of the title "Mrs." is no part of a name and merely designates the party employing it as a married woman. ■ But when a transaction is carried on by a woman in the name of "Mrs." with the use of specific initials, even though the initials may be those of her husband, in the absence of evidence to the contrary, there is a presumption she is negotiating the business in her own behalf. Under such circumstances, the use of the name Mrs. C. U. Branch, having been invariably elsewhere employed in these documents to identify the contracting party, the use of the name C. U. Branch on the one occasion creates an uncertainty as to whether the scrivener may not have merely omitted to use the prefix "Mrs." For this reason also oral evidence was competent to dispel the uncertainty as to the identity of the contracting party.

The document upon which the appellant relies as an estoppel was not a complete contract with relation to the subject matter involved. It did not purport to state the entire terms or conditions upon which the bailment was accepted. It did not contain the signature of the appellant. It was a unilateral document. It was a mere permit. Section 1648 of the Civil Code provides that:

"However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."

■ In the present case the document upon which the appellant relies does not purport to contain the terms of the bailment. The several permits relating to the removal of the property should be construed together. (Sec. 1642, Civ. Code.) ■ The rule is well established that where the terms of a contract are ambiguous or it appears that it does not express the entire agreement, parol evi-

dence is admissible to explain the uncertainty. (*Williams* v. *Ashurst Oil, Land & Dev. Co.*, 144 Cal. 619 [78 Pac. 28]; *Jones-McLaughlin, Inc.*, v. *Kelly*, 100 Cal. App. 315 [279 Pac. 1076]; *Balfour* v. *Fresno Canal & Irr. Co.*, 109 Cal. 221 [41 Pac. 876].) Parol evidence is admissible to identify the parties to an agreement. (Jones on Evidence, Civil Cases, 3d ed., p. 693, sec. 451; 22 C. J., p. 1245, sec. 1660.) In the authority last cited it is said:

"At law as well as in equity, a mistake or variance in the name of a party may be shown and parol evidence admitted to show the real party intended." (*Greve* v. *Echo Oil Co.*, 8 Cal. App. 275 [96 Pac. 904].)

In the present case oral evidence of the identity of the owner of the property was therefore competent.

There appears to be no merit in the appellant's contention that the damages were excessive or unsupported by the evidence. The owner of personal property may testify as to its market value. (*Hood* v. *Bekins Van & Storage Co.*, 178 Cal. 150 [172 Pac. 594]; *Willard* v. *Valley Gas & Fuel Co.*, 171 Cal. 9 [151 Pac. 286].)

The evidence sufficiently supports the ruling of the court permitting Mrs. Powell to testify as an expert witness regarding the market value of the household goods. The adequacy of her qualifications was largely discretionary with the trial judge. Except for an abuse of this discretion, the ruling will not be disturbed on appeal. (*Hood* v. *Bekins Van & Storage Co., supra.*)

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 21, 1930.