[Civ. No. 9079. First Appellate District, Division One.—March 28, 1935.]

M. C. SMITH, Respondent, v. C. C. MILLER et al., Appellants.

Franklin T. Poore for Appellants.

A. Don Duncan for Respondent.

OGDEN, J., *pro tem.*—This is an action in conversion brought by the assignee of Mr. and Mrs. George Peak against defendants and appellants, a public warehouseman, for the value of certain items of household furniture stored with him by the Peaks and which he was unable to redeliver to them upon demand. Appellant admitted his failure to redeliver the goods and offered in excuse thereof that he had delivered them upon demand to the W. & J. Sloane company, the true owner. The trial court gave judgment in the amount of five hundred and fifty dollars, found to be the value of the goods. The following are the circumstances of the case.

In 1922 Mrs. George Peak called upon a Mr. Jeffreys, the credit manager of the W. & J. Sloane company, a firm engaged in the retail sale of home furnishings, to arrange for the selection and purchase of furnishings for her home to the estimated amount of three thousand dollars. After some preliminary discussion Mrs. Peak was advised that it would be necessary to secure her husband's consent and accordingly, on April 20, 1922, Mr. Peak wrote to the W. & J. Sloane company the following letter:

"Mrs. Peak has selected a bill of furniture at your store and wishes to purchase the same. On account of the greater part of my finances being tied up . . . , I have suggested to Mrs. Peak that she take the matter up with you and see if we can have some time on the payment of the furniture. Appreciating any favor shown us, I am,

"Yours very truly,
"GEORGE PEAK."

A few days later Mrs. Peak made an initial payment in the amount of fifteen hundred dollars and the following written agreement was entered into:

"As to settlement for furnishings to be supplied by you for my account to be delivered to 479–17th Avenue which it is estimated will amount to approximately $3,000.00, it is

agreed that in addition to initial payment of $1500.00 made herewith I will pay balance as follows:

"In consecutive monthly payments of $200.00 each, commencing June 1, 1922, together with interest on deferred payments @ 7% per annum. Pending full settlement it is understood that the title to all goods supplied shall remain in you and shall pass to me only on final payment.

"Yours truly,

"MRS. GEORGE PEAK. .·

"Accepted:

"W. & J. SLOANE

"By HERBERT M. JEFFREYS,

"Credit Manager."

Pursuant to the foregoing arrangements, Mrs. Peak selected, and there were delivered to her, numerous articles of furniture, over the period from April 28th to May 9th, of the total invoice value of $4,916.71. Four monthly payments of $200 each, as prescribed in the agreement were made, the last one being paid on October 23, 1922, subsequent to which time no further payments were or have ever been made on account of the purchase price.

In the month of October, 1922, Mr. Peak called upon Mr. Jeffreys and advised him he would not be able to continue the payments at that time and that he wanted to return the furniture, that that was the best he could do. Mr. Jeffreys replied that his company would not take the furniture back but would look to him for payment, that sooner or later he would be in a position to pay. Again in the summer or fall of the year 1924 a similar conversation was had, Mr. Peak again requesting that he be permitted to return the furniture and receive a credit for it and Mr. Jeffreys again replying that he would not take it back but looked to him, Mr. Peak, for payment. Monthly bills for the balance due and many letters demanding payment of the account were mailed to Mr. Peak at his office address over the entire period. On March 18, 1925, Mr. Peak was adjudicated a bankrupt, the claim of the W. & J. Sloane company being listed by him in the schedule of claims. No claim was filed in the bankruptcy proceedings, however, by the W. & J. Sloane company.

On September 20, 1924, Mr. Peak, with the consent of his wife, stored with the appellant, at his public warehouse in the city of San Francisco, the items of furniture which are the subject of this suit and which are part, but not all, of the furnishings hereinbefore referred to, and a. non-negotiable warehouse receipt in the usual form was issued to him evidencing the bailment. On May 26, 1926, upon the representation of the W. & J. Sloane company, that it was the legal owner of the goods and entitled to the possession thereof, appellant delivered them to that company upon its payment of the accrued storage charges and giving an indemnity bond holding appellant harmless from any liability therefor. No notice of the demand of the W. & J. Sloane company or of the delivery to it of the furnishings was given by appellant to either Mr. or Mrs. Peak, the first notice thereof had by them being a letter received on the following day from the W. & J. Sloane company stating that it had taken possession of the goods and demanding possession of the balance of the furnishings purchased under the conditional sale agreement. On October 8, 1926, a written notice was mailed to Mrs. Peak by the company that the furnishings would be sold at public auction and the proceeds of the sale credited to her account. Such a sale was held and the furnishings were sold on October 14, 1926. Upon receipt of the notice of sale, demand for the possession of the goods was made by the Peaks upon appellant and tender made of all storage charges. Appellant being unable to comply, this action in conversion was brought by their assignee.

The trial court found that, at the time of delivery of the goods to the W. & J. Sloane company, that company was not the owner of or entitled to the possession thereof and, in the language of the findings, "that on various occasions, prior to the month of May, 1926, George Peak and Ethel M. Peak offered to return the said personal property to W. & J. Sloane, and to permit said company to retake the same, and to have and accept the same as its exclusive property. That said W. & J. Sloane refused said offers and refused to and did not accept the return or possession of said property, or any part or parcel thereof, but insisted upon payment of the said purchase price and waived and wholly relinquished any and all right to retake or repossess or have possession

of any of said property; and the court finds, that by its acts and conduct, said W. & J. Sloane elected to treat the contract of sale of said property to said Ethel M. Peak, as a contract of absolute sale to said George Peak and/or Ethel M. Peak, and not as a conditional sale, and to hold said Ethel M. Peak and/or George Peak personally liable for the unpaid balance of said purchase price with title to said property vested in said Ethel M. Peak and/or George Peak . . . ''

The original transaction between the W. & J. Sloane company and the Peaks was purely one of conditional sale, title to the goods having been expressly reserved in the former until full payment of the purchase price. Altho, as pointed out by respondent, the written agreement does not specifically enumerate the items of furniture, title to which is to be reserved, the delivery to and acceptance by Mrs. Peak of the articles selected by her, as enumerated in the invoice received in evidence, leaves no uncertainty in that regard. That is certain which can be made certain. (Sec. 3538, Civil Code.)     The transaction being one of conditional sale the Peaks received only a conditional right of possession forfeitable upon any default in the payment of the purchase price (*Bice* v. *Harold L. Arnold, Inc.*, 75 Cal. App. 629 [243 Pac. 468]). Upon such default occurring, as it did, in the month of November, 1922, the W. & J. Sloane company had the right of election either to treat the contract as involving a conditional sale and retake possession of the furniture or treat it as one involving an absolute sale relying solely upon the personal liability of the vendee for the balance of the purchase price. (*Johnson* v. *Kaeser*, 196 Cal. 686 [239 Pac. 324], and numerous authorities cited therein.) These remedies being inconsistent, the vendor may elect which he would pursue but he cannot have both, and an election exercised to pursue one forfeits his right to subsequently pursue the other (*Holt Mfg. Co.* v. *Ewing*, 109 Cal. 353 [42 Pac. 435]; *Frankel* v. *Rosenfield*, 95 Cal. App. 647 [273 Pac. 122]; *Martin Music Co.* v. *Robb*, 115 Cal. App. 414 [1 Pac. (2d) 1000]; *Cocores* v. *Assimopoulos*, 127 Cal. App. 360 [15 Pac. (2d) 892]).

This brings us to what we deem the principal question involved in this appeal, whether there was an election exercised by the W. & J. Sloane company to treat the trans-

action as an absolute sale. It is said in *Hines* v. *Ward*, 121 Cal. 115 [53 Pac. 427], "It is true that a party having inconsistent remedies may not pursue both, but must choose between them; and, having clearly elected to proceed upon one, will be debarred from invoking the other. But what amounts to such election is not always clear. . . . The doctrines of election, as applied to a choice of remedies which precludes a party from claiming repugnant rights, is but an extension of the general principles of equitable estoppel, and proceeds upon a like theory, that the inconsistent attitude of the party will put his adversary to some disadvantage." In *De Laval Pac. Co.* v. *United C. & D. Co.*, 65 Cal. App. 584 [224 Pac. 766], the rule is stated as follows: "Whenever a party entitled to enforce two remedies either institutes an action upon one of such remedies or performs any act in the pursuit of such remedy, whereby he has gained any advantage over the other party, or he has occasioned the other party any damage, he will be held to have made an election of such remedy, and will not be entitled to pursue any other remedy for the enforcement of his right."

However, in *Martin Music Co.* v. *Robb, supra,* in determining whether the commencement of suit by the conditional vendor for the balance of the purchase price precluded him from subsequently, after dismissal of the action before judgment, pursuing the remedy of recapture, a more liberal rule than that based strictly upon the doctrine of estoppel is recognized as follows: "A waiver can be inferred whenever the conduct of the seller is inconsistent with the idea that he still intends to enforce a return of the goods if the conditions are not performed; whether or not such is the case is a question of fact. Any act on the part of the seller clearly manifesting an intention to treat and rely upon the unpaid purchase price as an absolute debt from the purchaser will be deemed an election to waive the conditions of the sale, resulting in title passing to the purchaser, and precluding the seller from thereafter retaking the property."

Thus, in the case of *Holt Mfg. Co.* v. *Ewing, supra,* the filing of a claim for the balance of the purchase price with the administratrix of the estate of the deceased conditional vendee was held to constitute such an election. And, similarly, in the case of *Boas* v. *Knewing,* 175 Cal. 226 [165 Pac.

690, L. R. A. 1917F, 462], it was held that a notice to the vendee threatening replevin proceedings manifested such an election as to preclude the right to subsequently sue for the purchase price after the property had been returned pursuant to such threat. It has been repeatedly held that the commencement of any litigation that can proceed only on the theory that title has passed constitutes an election that the seller may not revoke. (*Martin Music Co.* v. *Robb, supra.*) These authorities do not rely upon the existence of the elements of estoppel, but are determined rather upon a consideration of whether the seller has clearly evidenced and manifested a position inconsistent with the remedy there sought.

The question as to whether an election was exercised in the instant case, is as before stated, one of fact, which was for the trial court to determine from all the circumstances of the case. We cannot say that the trial court's finding in this regard is entirely without support in the evidence.

█ It is true that in a contract of conditional sale the ultimate object of the seller is to obtain payment of the purchase price and, of course, a defaulting vendee has no right to require his vendor to retake the goods or then and there forever lose his right to do so. Nor does the mere insistence by the vendor upon payment of the purchase price constitute a waiver of his alternative remedy. Nor would the liberality of the vendor in delaying enforcement of either remedy deprive him of any rights under the contract. (*McConnell* v. *Redd,* 86 Cal. App. 785 [261 Pac. 506].) Such circumstances, although not of themselves constituting an election might, however, be evidence of the fact that an election had been exercised, and from any or all such circumstances a waiver of the right of recapture be fairly inferred.

Here there was a delay of approximately three and one-half years after the first default in payment, a period in excess of that prescribed for the commencement of actions for the recovery of personal property. (Sec. 338, subd. 3, Code Civ. Proc.) During that entire period constant and insistent demands were made upon Mr. Peak for the payment of the account, no mention being made of the return of the goods except to refuse it whenever offered. All statements and demands for payment were addressed to Mr. Peak in whose sole name the account was, at least, from the year

1923, carried, and who was not a direct party to the conditional sales contract. In refusing to accept a return of the goods, Mr. Peak was expressly advised that they were looking to him for payment. No effort was made to retake possession until after the discharge of the debt in bankruptcy. Although no one of the foregoing circumstances might of itself be said to constitute an election, viewing the evidence in its entirety, a reasonable inference arises therefrom that by its conduct the W. & J. Sloane company elected to treat the sale as an absolute one and confirmed title to the furniture in the Peaks.

■ Such being the case, the delivery of the goods to the W. & J. Sloane company constituted a conversion thereof. Although a warehouseman is justified in delivering goods to their true owner upon demand (section 9, Warehouse Receipts Act, Stats. 1909, p. 437; *Travers* v. *Burdge,* 101 N. J. L. 237 [127 Atl. 191]; *Farmers Union Warehouse Co.* v. *Barnett,* 214 Ala. 202 [107 So. 46]), in purporting to do so he acts at his peril if such person is not in fact entitled to their possession. (*Wetherly* v. *Straus,* 93 Cal. 283 [28 Pac. 1045]; *Jeffers* v. *Easton, Eldridge & Co.,* 113 Cal. 345 [45 Pac. 680]; *Branch* v. *Bekins Van & Storage Co.,* 106 Cal. App. 623 [290 Pac. 146].)

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 27, 1935, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 27, 1935.