Donald P. Gorman, J.
This action presented upon agreed facts seeks judgment against two insurance carriers which have disclaimed liability for personal injuries and property damage arising out of the delivery of fuel oil to an erroneous address. The oil was discharged through an intake valve onto the floor of a cellar containing no receptacle for its storage. A quickly resulting five caused the personal and property damage for which judgments have been entered against the plaintiff. It is not here questioned that the policies were in full effect and that due notice to defend was given.
Plaintiff, a fuel oil and coal dealer, was insured under a comprehensive general liability policy issued by the defendant, Indemnity Insurance Company of North America (hereinafter called North America), and a comprehensive automobile liability policy issued by the defendant, the Home Indemnity Company (hereinafter called Home).
The Home policy in substance insured the plaintiff against damage arising out of the ownership, maintenance and use of any automobile, specifically extending the liability to include loading and unloading. Issued concurrently with the policy was a printed exclusion clause:
“ Erroneous Delivery of Gasoline or Oil ”
“ It is agreed that such insurance as is afforded by the policy * * * with respect to accidents arising out of the erroneous delivery of gasoline for oil or oil for gasoline, or the delivery of gasoline or oil into the wrong receptacle, shall not apply if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof; provided, such operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to a service or maintenance agreement.”
Home is relying upon this clause to support its assertion that its policy does not cover the instant accident. Analysis points up the twofold vulnerability of this position. The burden is *447 upon the defendant carrier to establish not only that the words and expressions used are susceptible of the construction which it seeks, ‘ ‘ but that it is the only construction that can fairly be placed thereon.” (Hartol Prods. Corp. v. Prudential Ins. Co., 290 N. Y. 44, 49; Utica Carting, Stor. & Contr. Co. v. World Fire & Mar. Ins. Co., 277 App. Div. 483, 488.) While it is true that if the terms of the contract and its exclusion clauses are clear and unambiguous, they must be read in their ordinary sense, precluding any interpretation upon the part of the court, it is axiomatic that any ambiguity must be construed to the advantage of the insured and against the insurer who selected the wording. (Hartol Prods. Corp. v. Prudential Ins. Co., supra, p. 49.) It is settled that the language employed must be accorded that connotation which a policyholder of ordinary intelligence, as well as the insurer, would usually attach to it. If the insurer wishes to exclude any liability from the general coverage of the policy or to limit its liability in the manner now asserted, it has the responsibility of couching the exclusion in clear and unmistakable language so that no average person can be misled. (Morgan v. Greater N. Y. Taxpayers Mut. Ins. Assn., 305 N. Y. 243, 248; Birnbaum v. Jamestown Mut. Ins. Co., 298 N. Y. 305, 312.)
The general purpose of the policy was to protect the insured from damage arising out of the use of its motor vehicles, and the risk here involved would normally be covered by the standard loading and unloading clause. The policy and the exclusory indorsement were issued on the same day and the exclusion may not be considered to evidence a later or divergent intention from that expressed in the body of the policy. (Birnbaum v. Jamestown Mut. Ins. Co., supra, p. 312.) We are here confronted not with a contemplated erroneous delivery of oil for gasoline or gasoline for oil, nor yet with delivery into a wrong receptacle, but rather a delivery to a wrong address. To construe this error as delivery into a wrong receptacle would strain the meaning of “ receptacle ” beyond the conceptions of the ordinary man and its definitive meaning to the benefit of the insurer and to the detriment of the insured. The rule which construes any ambiguity against the insurer has particular application where exclusions are involved. (Matsuo Yoshida v. Liberty Mut. Ins. Co., 240 F. 2d 824, 826.)
Even if the exclusion clause were so construed as to encompass this error, it would not protect the insurer under the present unusual circumstances. Each case must stand upon its own facts. Initially there must be a causal connection between the use of the motor vehicle and the resultant damage. *448 It is not now disputed that the delivery was a proximate cause of the ensuing damage nor that the fire followed as a direct result without the intervention of another human act. The oil on the cellar floor of the wrong building was a continuing agency for harm. (See General Acc. Fire & Life Assur. Corp. v. Hanley Oil Co., 321 Mass. 72.) The exclusion was to be effective only if the unloading had been completed. There has been much dispute as to the legal meaning of loading and unloading. New York adheres to the majority view holding that these operations embrace not only the immediate loading and unloading of the vehicle, but the “complete operation” from the first moving of the goods to the vehicle “until the merchandise actually is delivered to the consignee and arrives at the ultimate point of delivery designated by such consignee ” (Lowry v. Macy & Co., 119 N. Y. S. 2d 5, 9; Wagman v. American Fidelity & Cas. Co., 304 N. Y. 490, 494; American Automobile Ins. Co. v. American Fidelity & Cas. Co., 106 Cal. App. 630). It is not disputed that the fuel oil was never delivered to 604 Bleecker Street, the designated address, nor that the purpose of the operation was to leave the oil'at that address. Until the oil was deposited at its prescribed destination, the operation was not complete. (See American Automobile Ins. Co. v. American Fidelity & Cas. Co., supra, p. 650.) The exclusion clause has no application to the present situation, and Home is liable under its policy.
The North America policy of comprehensive general liability insurance, covenanting to pay damages for bodily injury and property damage caused by accident, contained within the body of the policy the following printed exclusion:
“ This policy does not apply:
“ (b) except with respect to operations performed by independent contractors, to watercraft while away from premises owned, rented or controlled by the named insured, automobiles while away from such premises or the ways immediately adjoining, or aircraft, or the loading or unloading thereof; ”.
In the typewritten ‘ ‘ declarations ’ ’ and in the typewritten description of “ hazards: Premises — Operations,” the insured is listed as coal, fuel oil or wood dealers. Again, under Hazard (e), Products (Including Completed Operations), for which coverage the plaintiff paid a substantial additional premium, it is listed as “ Fuel Oil or Kerosene Dealers not selling or handling gasoline
*449 The policy defines ‘ ‘ Products Hazard ’ ’ as follows: ‘ ‘ The term 1 products hazard ’ means
“ (1) the handling or use of, * * * goods or products manufactured, sold, handled or distributed by the named insured, * * * if the accident occurs after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured * * *
“ (2) operations, if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from premises owned, rented or controlled by the insured * * * provided, operations shall not be deemed incomplete because improperly or defectively performed ”.
“Handling” has been construed to embrace the negligent loading of a freight car by an employee of an insured, and coverage held afforded under a comparable ‘ ‘ products liability ” clause where a third party who opened the door of the freight car was killed by movement of the paper so loaded. (Employers Mut. Liability Ins. Co. v. Underwriters at Lloyd’s, 80 F. Supp. 353, affd. 177 F. 2d 249.) It is thought that under the present peculiar circumstances that “handling” must cover the negligent delivery or distribution of this product to an erroneous address. (See U. S. Sanitary Specialties Corp. v. Globe Ind. Co., 204 F. 2d 774.) If ambiguity exists, it must be construed against North America. This principle is clearly delineated in Muller v. Sun Ind. Co. of N. Y. (276 App. Div. 1028, affd. 302 N. Y. 634). Employees of a warehouseman transported a piano by truck from the warehouse to a private residence. While transporting the piano downstairs, a high pressure gas fitting was broken, resulting in an explosion causing personal and property damage. The trial court dismissed as to the two general liability carriers whose policies covered handling of household goods away from the insured’s premises but excluded coverage of accidents caused in loading and unloading of vehicles. Judgment was rendered against the automobile carrier. In reversing as to the two general liability carriers, the Appellate Division said (p. 1029): “ At best, these stated provisions of the policies presented an ambiguity which must be resolved in favor of the insured plaintiff-appellant.”
The insurer is presumed to have known the nature of the insured’s business, and that it was one in which accidents were, likely to happen. Normally one purchasing comprehensive insurance protection with express coverage for products hazard, including handling of the product, would expect his ordinary transactions to be covered, and that the term “ com *450 prehensive ” would include “ those damages which an ordinary individual would reasonably and naturally regard as incidental to or flowing from the hazard insured against.” (Tonkin v. California Ins. Co., 294 N. Y. 326, 329.) If the insurer would create an exception to such coverage, he must do so clearly. (Ritchie v. Anchor Cas. Co., 135 Cal. App. 245.) Here a careful and repeated reading of the general coverage provisions, the exclusion clause relative to automobiles away from the premises and the definition of “ products hazard ” only serves to emphasize the vagueness and ambiguity of the policy in relation to the present liability. (See McAllister v. Century Ind. Co. of Hartford, 24 N. J. Super. 289, affd. 12 N. J. 365; Muller v. Sun Ind. Co. of N. Y., supra.) The average businessman would find great difficulty in reconciling the express coverage provisions of handling away from the premises and the exclusory inclusion of unloading.
Under present practice, overlapping or concurrent coverage is often provided under comprehensive policies even though underwriters may not have so anticipated nor contemplated, especially since the introduction of the loading and unloading clauses into automobile insurance. (See Bituminous Cas. Corp. v. Travelers Ins. Co., 122 F. Supp. 197.) The claimed exclusion is not applicable and North America is liable under its policy.
The plaintiff is entitled to judgment in the stipulated amounts plus $2,500 for legal services.
The foregoing constitutes the written and signed decision of the court. (Civ. Prac. Act, § 440.)
Let judgment be entered accordingly.